UNITED STATES DISTRICT COURT FOR THE
CENTRAL DISTRICT OF CALIFORNIA
WESTERN DIVISION

| | |
|---|---|
| YAYOMI KANAI<br><br>  Plaintiff<br><br>  -   Against –<br><br>UNITED STATES DEPARTMENT OF HOMELAND SECURITY and UNITED STATES CITIZENSHIP AND IMMIGRATION SERVICES<br><br>  Defendants | CASE NO.<br><br>STATEMENT OF POINTS AND AUTHORITIES IN SUPPORT OF MOTION FOR  EX PARTE TEMPORARY RESTRAINING ORDER AND PRELIMINARY INJUNCTION |

## INTRODUCTION AND SUMMARY

The plaintiff, Yayomi Kanai, has moved for an Ex Parte Temporary

Restraining Order restraining the Department of Homeland Security and/or its

officers, employees or agents from issuing an order to remove her from the United

States, to be followed with a preliminary injunction.  It is represented by the

United States Attorney for the Central District of California, the address of which

is:

United States Attorney's Office
Central District of California
312 North Spring Street
Suite 1200
Los Angeles, California 90012

(213) 894-2400[1]

**Because this action** falls within "a very narrow band of cases in which ex parte orders are proper because notice to the defendant would render fruitless the further prosecution of the action*"*, 2013 U.S. Dist. LEXIS 19503, at *5 (citing *Am. Can Co. v. Mansukhani*, 742 F.2d 314, 322 (7th Cir. 1984)) *Blair v. California*, No. CV 09-4460-GW(AGRx), 2013 U.S. Dist. LEXIS 200132, at *6 (C.D. Cal. Sep. 5, 2013), Ms. Kanai has established serious questions, at the very least, on the merits of her claim, the balance of hardships between the parties tips sharply in her favor and  the public interest favors a temporary restraining order, it should be issued.

BRIEF STATEMENT OF RELEVANT FACTS

The United States Citizenship and Immigration Services, USCIS, in a decision denying Ms. Kanai's application for adjustment of status, date May 12, 2020, states that:

> USCIS records and your (Ms. Kanai's) testimony establish that you entered the United States as a visitor for pleasure admitted under the Visa Waiver Program (VWP) on or about September of 1995 and departed on or about December of 1995. You reentered the United States as a visitor for pleasure admitted under the Visa Waiver Program (VWP) on an unknown month in 1996. You were authorized to remain in the United States for 90 days in accordance with the VWP. However, you remained in the United States until an unknown month in 2003, at which time you departed. You were unlawfully present in the United States for a period of more than one year. You then reentered the United States as a visitor for pleasure admitted under

---

[1] The U.S. Attorney's Office's general email address does not seem to appear on its website. But that of its Civil Rights Division and Public Affairs Division do: USACAC.CV-CivilRights@usdoj.gov;  thom.mrozek@usdoj.gov.

the Visa Waiver Program (VWP) on or about November 4, 2005 and have not departed.

Exhibit A at 2

The Decision also noted that Ms. Kanai filed an application to adjust her status to permanent resident on the basis of her marriage to Dwight Liu, a U.S. citizen. *Id.* at 1. That application was denied on the date of the Decision. *Id*. at 5[2]. Further, the Decision comments that:

"The evidence of record shows that, when you filed your application, you were present in the United States contrary to law. You are not authorized to remain in the United States." *Id*.

However, the Decision did not order Ms. Kanai removed. To the contrary it stated that:

If you fail to depart the United States within 33 days of the date of this letter, USCIS may issue you a Notice to Appear and commence removal proceedings against you with the immigration court. This may result in your being removed from the United States and found ineligible for a future visa or other U.S. immigration benefit. See sections 237(a) and 212(a)(9) of the INA.

Exhibit A at 5.

Even the DHS  would agree that this portion of the Decision was manifestly in error. Ms. Kanai in fact waived her right "to contest, other than on the basis of

---

[2] The sole basis for that denial was, as discussed below, Ms. Kanai's purported inadmissibility due to a prior overstay. *Id*. at 5. Mr. Liu's petition upon his wife's basis was approved, Exhibit B, and no question has been raised regarding the bona fides of their marriage. Exhibit A.

an application for asylum, any action for removal of the alien" when she entered

the U.S. pursuant to the Visa Waiver program. 8 U.S.C. § 1157(b)(2). Thus, Ms.

Kanai, who has no reason to apply for asylum, may not contest a removal order,

once issued by a DHS Officer. However, as the Decision showed, no such Order

had been issued as of that date. Nor has Ms. Kanai been notified of one since.

THE LEGAL STANDARD FOR A TRO

As a district judge of this Circuit recently explained:

> Plaintiffs seeking a preliminary injunction must establish one of two tests. *All. for the Wild Rockies v. Pena*, 865 F.3d 1211, 1217 (9th Cir. 2017). The first test requires Plaintiffs to show: (1) that they are "likely to succeed on the merits," (2) that they are "likely to suffer irreparable harm in the absence of preliminary relief," (3) "the balance of equities tips in [their] favor," and (4) "an injunction is in the public interest." *Coffman v. Queen of Valley Med. Ctr.*, 895 F.3d 717, 725 (9th Cir. 2018)(*citing Winter v. Nat. Res. Def. Council*, Inc., 555 U.S. 7, 129 S. Ct. 365, 172 L. Ed. 2d 249 (2008) (*internal quotation marks omitted*)). Under the second variant of the 9th Circuit's test for a preliminary injunction, the "sliding scale" version of the *Winter* standard provides that "if a plaintiff can only show that there are serious questions going to the merits—a lesser showing than likelihood of success on the merits—then a preliminary injunction may still issue if the balance of hardships tips sharply in the plaintiff's favor, and the other two *Winter* factors are satisfied." *All. for the Wild Rockies*, at 1217 (*internal quotation marks and citations omitted*)

*Belgau v. Inslee*, No. 18-5620 RJB, 2018 U.S. Dist. LEXIS 175543, at *11

(W.D. Wash. Oct. 11, 2018). Further the same test applies to Temporary

Restraining Orders. *Castillo v. Barr*, No. CV 20-00605 TJH (AFMx), 2020 U.S.

Dist. LEXIS 54425, at *11 (C.D. Cal. Mar. 27, 2020)

ARGUMENT

I.     THIS COURT SHOULD ISSUE AN EX PARTE TEMPORARY
       RESTRAINING ORDER

A. THIS COURT HAS JURISDICTION OVER THIS ACTION

Inasmuch as this is an action arising under the Administrative Procedure

Act, 5 U.S.C. § 551 et seq., a law of the United States, this Court has jurisdiction

over this matter under 28 U.S.C. § 1331.

B. MS. KANAI HAS RAISED AT LEAST A SERIOUS QUESTION THAT
       THE USCIS' DECISION DENYING HER APPLICATION FOR
       ADJUSTMENT OF STATUS WAS NOT IN ACCORDANCE WITH LAW

1.  The Decision is contrary to the plain language of the statute.

The Decision held that:

You were unlawfully present in the United States for a period of more than
one year, then voluntarily departed in 2003. Thus, you accrued more than
one year of unlawful presence in the United States from 1996 to 2003. Since
you did not obtain an advance parole document prior to leaving the United
States, your leaving the United States counts as a "departure' for purposes of
inadmissibility. See Maller of Arrabally, 25 I&N Dec. 771 (BIA 2012).
Therefore, you are inadmissible to the United States.

Exhibit A at 2.

However, 8 U.S.C. § 1182(a)(9)(B)(i) provides in relevant part that:

(i)In generalAny alien (other than an alien lawfully admitted for permanent
residence) who— …
(II)has been unlawfully present in the United States for one year or more,
and who again seeks admission within 10 years of the date of such alien's
departure or removal from the United States,

is inadmissible.

Although Ms. Kanai, as an applicant for adjustment of status, is assimilated to the status of a person seeking admission, nevertheless, she departed the U.S. over 16 years ago. She is therefore not someone who again seeks admission within 10 years of the date of her departure from the United States and so is not inadmissible  under  8 U.S.C. § 1182(a)(9)(B).

2. The USCIS' arguments against application of the plain language of § 1182(a)(9)(B) are without merit.

    a. 8 C.F.R. § 212.2(a) does not support the Decision's claim that Ms. Kanai's substantive non-lawful admission "tolled" her inadmissibility period.

    The USCIS elaborated upon its holding by asserting that:

    Acquiring more than one year of unlawful presence followed by a departure from the United States renders an individual inadmissible for ten years from the date of such departure. See INA 212(a)(9)(B)(i)(II). In your case, the period of inadmissibility would have continued until 2013, but was tolled when you were admitted to the United States on November 4, 2005 as a visitor for asure under the VWP without an INA 212(d)(3) waiver of inadmissibility. Although your return was a procedurally regular "admission" pursuant to *Matter of Quilantan*, 25 l&N Dec. 285 (BIA 2010), it was not substantively lawful in view of the existing unlawful presence ground of inadmissibility, which precludes your admissibility now for purposes of INA 245(a)(2). For your admission to have been substantively lawful, you would have had to obtain a waiver of nonimmigrant inadmissibility under INA 2 l 2(d)(3) at the time of your entry on November 4, 2005. Cf 8 C.F.R. 212.2(a) ("A temporary stay in the United States under section 212(d)(3) of the Act does not interrupt the five or twenty consecutive year absence equirement.); see also,  Memo, Donald Neufeld, Acting Associate Director, Consolidation of Guidance Concerning Unlawful Presence for Purposes of Sections 2l2(a)(9)(B)(i) and 2l2(a)(9)(C)(i)(I) of the Act, at 46 (May 6, 2009).  The record currently contains no evidence that

you obtained a section 212(d)(3) waiver of inadmissibility. Thus, while your admission was procedurally regular, your admission was substantively unlawful and therefore tolled the running of the 10 year bar to admissibility under INA 2l2(a)(9)(B)(i)(II).

Exhibit A at 2-3.

The Decision cites no provision of § 1182(a)(9)(B), nor any other part of the Act, supporting its claim that Ms. Kanai's failure to make a substantively lawful admission tolled the 10 year inadmissibility period in § 1182(a)(9)(B).[3] But it does invite the reader to compare its argument to 8 C.F.R. § 212.2(a). However, this regulation refers only to persons who are inadmissible for having been ordered removed from the United States. The USCIS does not claim that Ms. Kanai has been removed, so the regulation, like § 1189(a)(9)(B) itself, is inapplicable on its face. The Decision therefore appears at first glance to have no authority at all for its assertions.

Nevertheless, the  Decision later cites two Supreme Court decisions, *Goodyear Atomic Corp. v. Miller*, 486 U.S. 174, 184-85 (1988) and  *Lorillard v. Pons*, 434 U.S. 575, 580 ( 1979), for what it implies is the proposition that where Congress enacts a statutory provision with language similar to a pre-existing one, it

---

[3] The USCIS memorandum referenced in the Decision is relevant only to the extent that it comments that an alien subject to § 1182(a)(9)(B) inadmissibility may obtain a waiver only § 1182(d)(3). It provides no support for the Decision's tolling argument.

intends that provision to be interpreted in the same way as the administrative agency has been interpreting the prior one. However, neither decision asserts, even in dictum, this idea or anything like it. *General Atomic* merely held, in relevant part, that where Congress adopted statutory provision subjecting federal nuclear power plants to state workmen's compensation laws, it was presumed to know what those laws said, while *Lorrilard*, equally irrelevantly, held that when a law expressly incorporates the ""powers, remedies, and *procedures*" of another law, then that includes jury trials, where the incorporated statute included the same. Neither of them said that a new statute should be interpreted the same way as an agency construed the older one's similar language.

But quite aside from not being supported by any of the caselaw cited for it, the Decision's tolling argument has three additional flaws. First, by adopting a regulation applicable to § 1182(a)(9)(A), but not § 1182(a)(9)(B), the Department of Homeland Security actually expressed its intent that its interpretation of § 1182(a)(9)(A) **not** be extended to § 1182(a)(9)(B). Second, published BIA caselaw shows that § 1182(a)(9)(A) and (B) are not to be interpreted similarly, but in fact a more lenient interpretation is applicable to § 1182(a)(9)(B). Finally, the Decision's interpretation is contrary not only to the plain language of the statute, but also canons of construction against superfluousness and of *expressio unius est exclusio alterius*

i.      It should be presumed that DHS did not intend 8 C.F.R. § 212.2(a) to be applied to § 1182(a)(9)(B)

In *Russello v. United States*, the Supreme Court observed that  "[w]here Congress includes particular language in one section of a statute but omits it from another, it is generally presumed that Congress acts intentionally and purposely in the disparate inclusion or exclusion." 464 U.S. 16, 23 (1983). Inasmuch as "we look to general rules of statutory construction to interpret and analyze the pertinent regulations", *Matter of H-N-*, 22 I. & N. Dec. 1039, 1041 (BIA 1999), therefore the fact that the Secretary of Homeland Security adopted a regulation which appears intended to imply that admission to the U.S. while subject to the deportation bar under 8 U.S.C. § 1182(a)(9)(A) tolls that inadmissibility period unless the admission is authorized under 8 U.S.C. § 1182(d)(3) creates a presumption that the Secretary acted intentionally and purposely in the disparate exclusion of similar language pertaining to § 1182(a)(9)(B) inadmissibility, a presumption which is reinforced first, by the fact that the two provisions are contained not just in the same section of the Act, but in fact in the same subsection ( § 1182(a)) and even the same paragraph, § 1182(a)(9), and are in immediately adjacent subparagraphs.

Thus, 8 C.F.R. § 212.2(a), far from supporting the Decision's claim that § 1182(a)(9)(B) is subject to a similar form of tolling, actually refutes it.

ii.     The BIA has held that § 1182(a)(9)(B) is to be interpreted differently, and more liberally, than § 1182(a)(9)(A)

In *Matter of Arrabally*, 25 I&N Dec. 771 (BIA 2012), the Board of Immigration Appeals held that persons who had been unlawfully present in the U.S. would not be considered to have made a "departure", triggering the 3 or 10 year bars referred to in § 1182(a)(9)(B), if they left pursuant to a grant of advance parole, but stressed that similar generosity would not be shown to those who left the U.S. subject to a removal order, even with a grant of advance parole, but expressly limited its holding only to persons whom a departure made inadmissible under subparagraph (B), stressing that:

> We emphasize that we hold only that an alien cannot become inadmissible *under section 212(a)(9)(B)(i)(II)* solely by virtue of a trip abroad undertaken pursuant to a grant of advance parole. Our decision does not preclude a trip under a grant of advance parole from being considered a "departure" for other purposes, nor does it call into question the applicability of any other inadmissibility ground.

> *Arrabally*, 25 I&N Dec. at 779.

Inasmuch as commencement of the inadmissibility period for persons ordered removed from the United States is also triggered by a departure, 8 U.S.C. § 1182(a)(9)(A)(ii), the Board must have been referring directly to them when making clear that the liberal treatment of persons potentially subject to subparagraph B inadmissibility would not be extended to other groups.

*Arrabally*, a precedent decision binding upon all USCIS officials, 8 C.F.R. § 1003.1(g)(1), shows that not only are §§ 1182(a)(9)(A) & (B) not to be interpreted

identically, but that a substantially more forgiving standard will be applied in interpreting subparagraph (B) than (A). This reinforces the conclusion that DHS intentionally did not make the harsh provisions of 8 C.F.R. § 212.2(a) applicable to § 1182(a)(9)(B).

iii.   Application of 8 C.F.R. 212.2(a) to all similar language in § 1182(a)(9) would be contrary to the canon against superfluousness

"Superfluousness" refers to " the basic interpretive canon that '[a] statute should be construed [to give effect] to all its provisions, so that no part will be inoperative or superfluous, void or insignificant."'" *Corley v. United States*, 556 U.S. 303, 304, 129 S. Ct. 1558, 1560 (2009). *Hibbs* v. *Winn*, 542 U.S. 88, 101, 124 S. Ct. 2276, 159 L. Ed. 2d 172.

Here there are two subparagraphs, (A) and (B), of 8 U.S.C. § 1182(a)(9), both providing that a noncitizen shall be inadmissible if she "seeks admission" 10 years after a departure. The USCIS apparently maintains that since there was a regulation in place at the time of the enactment of subparagraph (B) interpreting the same phrase in subparagraph (A), that this regulation should be controlling of subparagraph (B) as well. However, subparagraph (C) also uses a virtually identical phrase,, "seeking admission", in the following sentence:

"Clause (i)[4] shall not apply to an alien seeking admission more than 10 years after the date of the alien's last departure from the United States if, prior to the

---

[4] Which provides that any noncitizen who " has been unlawfully present in the United States for an aggregate period of more than 1 year, or

alien's reembarkation at a place outside the United States or attempt to be readmitted from a foreign contiguous territory, the Secretary of Homeland Security has consented to the alien's reapplying for admission."

The problem with the USCIS' proposed interpretation of § 1182(a)(9)(B) is that the application  of 8 C.F.R. § 212.2(a) to the phrase "seeking admission" in §1182(a)(9)(C) makes all the words after "United States" superfluous. Just as this regulation requires that a noncitizen remain outside the United States the full inadmissibility period before he can seek admission to this country, therefore, application of this regulation to § 1182(a)(9)(C) means that a person subject to this ground of inadmissibility must remain outside the U.S. for 10 years before he may apply for permission to return to the U.S. However, that is exactly what the last 35 words of § 1182(a)(9)(C)(ii) require. Such language would be unnecessary if Congress considered 8 C.F.R. § 212.2(a) applicable to the phrase "seeking admission". Accordingly, the USCIS' proposed interpretation is contrary to "one of the most basic interpretive canons,", *Corley v. United States*, 556 U.S. 303, 314 (2009)", that "[a] statute should be construed so that effect is given to all its provisions, so that no part will be inoperative or superfluous, void or insignificant .

---

**(II)** has been ordered removed under section 235(b)(1) [8 USCS § 1225(b)(1)], section 240 [8 USCS § 1229a], or any other provision of law, and who enters or attempts to reenter the United States without being admitted is inadmissible.

. . .'" *Hibbs v. Winn*, 542 U.S. 88, 101 (2004) (quoting 2A N. Singer, Statutes and Statutory Construction § 46.06, pp 181-186 (rev. 6th ed.). *See  also Desai v. United States Citizenship & Immigration Servs.,* No. SACV 14-593 DSF (JPRx), 2015 U.S. Dist. LEXIS 97084, at *4 (C.D. Cal. July 24, 2015) (" 1154(l) would make no sense if Congress did not approve of the general practice of denying petitions where the citizen relative has died — there is no need for an exception to a rule that does not properly exist.").

By the same token, the last phrase of § 1182(a)(9)(C)(ii) makes no sense if Congress believed that the law already provided that the periods of time specified by § 1182(a)(9) were interrupted by the unlawful return of the inadmissible noncitizen to the United States. As the USCIS reminds us,  "Congress is 'generally presume[d]...knowledgeable about existing law pertinent to the legislation it enacts." Exhibit A at 4, quoting *Goodyear Atomic*, 486 U.S. at 184-85. Since Congress was presumably aware of the existence of 8 C.F.R. § 212.2(a), its addition of the last 35 words of §1182(a)(9)(C) showed it did not consider this regulation applicable to all uses of similar phrases in §1182(a)(9), since otherwise those words would have been superfluous.


b.  The USCIS' tolling argument does not merit deference.

Equally meritless is the Decision's response to the fact that § 1182(a)(9)(B) only applies to those who seek admission within 10 years of their last departure, that "the statute either refutes your contention or is silent, such that the expertise of the agency interpreting the provision is entitled to deference.". Exhibit A at 3. The Decision does not even attempt to explain how the Act refutes Ms. Kanai's contention. Nor is the statute silent. It expressly states that only[5] an alien "who again

---

[5] Where a statute expressly applies to a certain situation, it plainly applies *only* to that situation. *See Carcieri v. Salazar*, 555 U.S. 379 (2009). In *Carcieri*, the relevant statute provided  that:

> The Secretary of the Interior is hereby authorized, in his discretion, to acquire through purchase, relinquishment, gift, exchange, or assignment, any interest in lands, water rights, or surface rights to lands, within or without existing reservations, including trust or otherwise restricted allotments whether the allottee be living or deceased, for the purpose of providing land for Indians.

25 USC § 5108 (formerly 25 USC § 465)
The Supreme Court began its discussion of the statute by emphasizing that  "This case requires us to apply settled principles of statutory construction under which we must first determine whether the statutory text is plain and unambiguous. … . If it is, we must apply the  statute according to its terms." *Carcieri*, 555 U.S. at 387 (citations omitted). Then the Court's very next sentence was "The Secretary may accept land into trust **only** for 'the purpose of providing land for Indians.'". *Id*. (emphasis added).
Even though the word "only" did not appear in the code section under discussion, the fact that the Court read that word into the section immediately after saying that it if the statutory text is plain and unambiguous it must apply to the statute according to the terms, leads directly to the conclusion  that the Court considered the word "only" to be a part of a statute applying to a particular situation, even if it is not expressly stated.

seeks admission within 10 years of the date of such alien's departure or removal from the United States, is inadmissible."

In any event, the Decision's tolling argument is in no way entitled to *Chevron* deference. First, it is in an unpublished decision. *Garcia-Quintero v. Gonzales*, 455 F.3d 1006, 1014 (9th Cir. 2006). Second, by extending § 1182(a)(9)(B) inadmissibility to persons applying for admission more than 10 years after their departure it contradicts the plain language of the statute. *CHW W. Bay v. Thompson*, 246 F.3d 1218, 1224 (9th Cir. 2001).[6] Third, it is contrary not only to the canon that a statute is to be construed according to its plain language and not to make any provision of the law superfluous, but also of *expressio unius est exclusio alterius*.[7] *Silvers v. Sony Pictures Entm't, Inc.*, 402 F.3d 881, 885 (9th Cir. 2005) ("Congress' explicit listing of who *may* sue for copyright infringement should be understood as an exclusion of others from suing for infringement. The

---

[6] How application of the USCIS' asserted tolling rule would contradict the plain language of the statute is apparent in the instant matter. The statute provides that a noncitizen who "has been unlawfully present in the United States for one year or more, and who again seeks admission within 10 years of the date of such alien's departure or removal from the United States," is inadmissible. But here the would be tolling rule makes Ms. Kanai inadmissible 16 years after her departure. In fact, if she never leaves the U.S. again it will become a permanent bar. This contradicts the plain language of the statute that the inadmissibility period applies to those seeking admission within 10 years of their departure from the U.S.

[7] "If a court, employing traditional tools of statutory construction, ascertains that Congress had an intention on the precise question at issue, that intention is the law and must be given effect."
*Chevron, U.S.A., Inc. v. NRDC, Inc.*, 467 U.S. 837, 843 n.9, 10 (1984)

doctrine of *expressio unius est exclusio alterius* 'as applied to statutory

interpretation creates a presumption that when a statute designates certain persons,

things, or manners of operation, all omissions should be understood as

exclusions.'" Quoting *Boudette v. Barnette*, 923 F.2d 754, 756-57 (9th Cir. 1991)).

So too by expressly stating that persons who are seeking admission within 10 years

of their last departure are inadmissible, § 1182(a)(9)(B) should be understood as

inapplicable to those seeking admission after 10 years. Therefore the Decision is

trebly unworthy of *Chevron* deference.

Ultimately however, the Decision's real argument is with the plain language

of the statute itself, which it considers "absurd". It complains that:

> The purpose of INA 2 1 2(a)(9)(B)(i) is to impose a civil sanction for
> previously remaining in the United States contrary to law. Your argument
> would mean that one can avoid this civil sanction simply by returning to the
> United States in a procedurally regular manner, although in an unlawful
> manner, and then waiting out the 1 year period here (and doing so, largely,
> in a lapsed and therefore unlawful status). In other words, your interpretation
> would create a perverse incentive: violating the law again would allow one
> to escape the sanction for the original violation. That is an "absurd result"
> that the statute could not have intended. See. e.g., *Griffin v. Oceanic
> Contractor*s, 458 U.S. 564, 575 (1982). The legislative and regulatory
> history amply supports rejecting that view. See *id*. at 575 ("interpretations of
> a statute which would produce absurd results are to be avoided if alternative
> interpretations consistent with the legislative purpose are available").

Exhibit A at 3.

However, if the agency's argument that any provision of the INA which

permits one to overcome civil sanctions by waiting a certain period in the U.S.,

even in an unlawful manner, is "absurd", then so is much of the Act, various

sections of which allows noncitizens to avoid the sanction of removal by simply

remaining in the U.S. unlawfully in including 8 U.S.C. §§ 1229b(b) ( remaining in

the U.S. for 10 years then applying for permanent residence by means of

"cancellation of removal", 1255(a) (allowing the immediate relatives of U.S.

citizens, such as Ms. Kanai, to adjust their status to permanent resident, no matter

how long they have been unlawfully present in the U.S., so long as like her, they

were inspected and admitted in a procedurally regular manner),  1255(i) (allowing

persons upon whose behalf immigrant visa petitions were filed on or before April

30, 2001 to adjust their status to permanent resident, no matter how long they had

been unlawfully in the U.S., 1259, permitting persons who have been in the U.S.

since prior to January 1, 1972 to adjust their status to permanent resident). Further,

§ 1229c(d)(1) permits a noncitizen who fails to voluntarily depart when he agreed

to, to avoid the  bar on  relief under sections 1229b (Cancellation of removal),

1255 (adjustment of status), 1258 (change of status , and 1259 (registry) simply by

remaining unlawfully in the U.S. since prior to 1972. In fact , § 1182(b)(9)(v)

allowing persons who actually are subject to the §1182(a)(9)(B)(i)(II) to apply for

a waiver of the same, and so adjust status, if, again like Ms. Kanai, they have a

U.S. citizen (or lawful permanent resident) spouse (or parent). ").

Of course in each of these cases the noncitizen must satisfy certain requirements beyond mere unlawful presence for a certain period, but then so does Ms. Kanai, who must satisfy the requirement of being admitted to the U.S. in a procedurally regular manner and be the beneficiary of an approved petition filed by her U.S. citizen immediate relative to be able to adjust status. Such forgiveness provisions in the Act are commonplace, and hardly "absurd".

But what is most compelling is that there is a Supreme Court decision which directly rejects the very same argument under circumstances virtually indistinguishable from those here. In *Commissioner v. Asphalt Prods. Co.*, 482 U.S. 117 (1987) (per curiam) the Supreme Court interpreted a tax statute that read: "if any part of any unpaid payment (of income tax)… Is due to and it is… There shall be added to the tax an amount equal to 5% of the underpayment." The taxpayer under paid taxes by $7000, but the vast majority of the underpayment (perhaps 90%) was filed by the tax court to have been neither fraudulent nor even negligent. The taxpayer argued that the 5% penalty should be calculated not on $7000, but only on the $700 underpayment that was negligent. Supreme Court refused to add to the language of the statute ("an amount equal to 5% of the underpayment)" the language necessary to reduce the tax payers perhaps-more-reasonable result ("an amount equal to 5% of the amount of the underpayment attributable to negligence". *Id.*

In doing so, the Court rejected the reasoning of a judge of the Sixth Circuit Court of Appeals, who claimed that it would be "absurd" to let the Commissioner calculate the negligent penalty by applying the statutory percentage than some of the negligent and nonnegligent underpayments)". The Court observed that "Judicial perception that a particular result would be unreasonable may enter into the construction of ambiguous provisions, but cannot justify disregard of what Congress has plainly and intentionally provided." *Id.*

The Court was particularly convinced that Congress had intended this "absurd" result because the very next paragraph of the statute, § 6653(a)(2) limited the 50% penalty on interest due on negligent underpayments to "the portion of the underpayment . . . which is attributable to the [taxpayer's] negligence." *Id.* In short, the Supreme Court concluded that Congress intended exactly the result dictated by the plain language of that section because in the very next section it changed his approach to exactly the result desired by the taxpayer.

So too here the best evidence that Congress intended that § 1182(a)(9)(B) be interpreted according to its plain language is the fact that the very next subparagraph, § 1182(a)(9)(C), contains virtually the same limitation that the Decision  would impose on subparagraph (B). This subparagraph provides that a person subject to its provisions could not apply for permission to return to the United States unless he was seeking admission more than 10 years after the date of

the alien's last departure from the United States from outside the country. Such a provision, of course, would mean that to qualify for such permission one must actually spend 10 consecutive years outside the U.S., since for anyone applying from outside the country, the 10 years since his last departure would necessarily have to have been outside. The fact that subparagraph (C) was enacted concurrently with subparagraph (B) demonstrates that Congress knew full well how to require that a 10 year inadmissibility period be spent outside the U.S. It chose to make that a requirement of § 1182(a)(9)(C). It chose to not make it a requirement of § 1182(a)(9)(B). Even if its choice was "absurd", the courts (and the agencies) are bound by the unambiguously expressed intent of Congress. It does not frustrate Congress's purpose to enforce the law the way intentionally wrote it.

Accordingly, Ms. Kanai's argument that the USCIS erred by failing to interpret 8 U.S.C. § 1189(a)(9)(B) according to its plain and unambiguous language raises, at the very least, serious questions regarding whether the USCIS' decision denying her application for adjustment of status was in accordance with law.

II.   MS. KANAI WILL SUFFER IRREPARABLE HARM IF THE
      DHS ORDERS HER REMOVED

If the DHS enters a removal order against Ms. Kanai she will suffer harm that is "certain and great," as she could, and presumably will, be removed from the United States at any time. Ms. Kanai was last admitted to the U.S. over 14 years ago. Exhibit A at 2. If she is forced to leave this country, she will be uprooted from her home, and community, including her U.S. citizen husband with whom she has resided for over ten (10) years,  for at least ten years, since her removal would result in her hereafter being barred from admission under §§ 1182(a)(9)(A)(ii)(I) and §1182(a)(9)(B)(i)(II). This is time Ms. Kanai would never get back, and a disruption to her life that could never be remedied. The harm is thus beyond remediation. *See Stellar IT Sols., Inc. v. United States Citizenship & Immigration Servs*., 2018 U.S. Dist. LEXIS 196284, *35-36, 2018 WL 6047413 (D.C.D.C. Nov. 19, 2018). *Cf. Sagarwala v. Cissna*, 2019 WL 1649943, 2019 U.S. Dist. LEXIS 64980, *6 ("Here, Sagarwala's claimed injuries all arise out of economic harm; her motion does not allege that she is now legally prohibited from residing in the United States. *Cf. Stellar IT*, 2018 U.S. Dist. LEXIS 196284, 2018 WL 6047413, at *11 (finding that plaintiff who was, as a result of H-1B denial, "without legal status at this moment and could, by law, be placed in removal proceedings at any time" had established irreparable harm)."). Ms. Kanai cannot be placed in removal proceedings at any time, she can actually be removed at any time, since she has surrendered the right to contest her removal.

III.    DEFENDANT WILL SUFFER NO HARM FROM THE GRANT OF A
        TRO

Further, the balance of equities tip strongly in the plaintiff's favor in that although she will suffer irreparable harm if the DHS is not stayed from issuing her a removal order, if there is any harm to the Department at all, it is minimal. *See Ortega-Peraza v. Ilchert*, No. C-92-4972 MHP, 1993 U.S. Dist. LEXIS 2195, at *15 (N.D. Cal. Feb. 26, 1993) ("On the other hand, the burden on the defendants that would result from prohibiting their withholding of employment authorization from Ortega-Peraza is minimal."). Here restraining the DHS from issuing Ms. Kanai a removal order will not even put DHS to the minimal burden that would have been imposed upon its predecessor by requiring it to grant employment authorization to Mr. Ortega-Peraza. In fact the proposed postponement literally requires the agency to do nothing, and so imposes no harm upon it whatsoever.

This is particularly true inasmuch as it is apparent from the Decision in this matter that the DHS currently isn't even aware that it can order  Ms. Kanai removed. Therefore it is inconceivable how DHS could possibly be prejudiced by being restrained from doing something it (currently) is apparently unaware it even can do. Finally, any inconvenience would be brief and fleeting, since it would

only last until this Court made a decision on Ms. Kanai's application for preliminary injunction.

IV.    THE PUBLIC INTEREST FAVORS POSTPONEMENT

Finally, the public interest favors a postponement of the effectiveness of the denial of the decisions as there is a public interest in just judgments. *Arizona v. Washington*, 434 U.S. 497, 510 (1978). A failure to restrain the issuance of a removal order  is likely to cause Ms. Kanai to leave the country before the case is completed, resulting in the mooting of this lawsuit, since her departure would constitute an automatic abandonment of her application for adjustment of status, 8 C.F.R § 245.2(a)(4)(ii). Since this would prevent the defendant's unjust judgment in this matter from being replaced with a just one, accordingly restraining the USCIS from issuing Ms. Kanai a removal order is in the public interest.

CONCLUSION

This Court should issue an ex parte order temporarily restraining the DHS, its officers or agents, from issuing an order of removal against Ms. Kanai pending a hearing on  her motion for a preliminary injunction. It should further order the DHS to show cause why it should not be stayed from ordering Ms. Kanai removed while this action is pending. If the DHS is unable to so show cause, then Ms.

Kanai's application for preliminary injunction restrain the issuance of an order

removing her should be granted.

/s/*Athina Doria*
*Athina Doria*
Attorney for the Plaintiff
Immigration Law Offices of Los Angeles, P.C.
3415 S. Sepulveda Blvd. Suite 570
Los Angeles, CA 90034
Phone: (213) 375-4084
Fax: (800) 628-5605
Email: athina@immigrationhelpla.com
Dated: June 15, 2020