U.S. Department of Homeland Security
U.S. Citizenship and Immigration Services
Los Angeles County Field Office
300 N. Los Angeles Street, Room 6024
Los Angeles, CA 90012



U.S. Citizenship
and Immigration
Services

May 12, 2020

Yayomi Kanai                                    A219216529
12891 Hammock Lane                              MSC1991142763
Playa Vista, CA 90094

## DECISION

Dear Yayomi Kanai:

On June 3, 2019, you filed Form I-485, Application to Register Permanent Residence or Adjust Status, with U.S. Citizenship and Immigration Services (USCIS) under section 245 of the Immigration and Nationality Act (INA).

After a thorough review of your application, supporting documents, and testimony during your interview, we must inform you that we are denying your application for the following reason(s).

Generally, to qualify for adjustment under INA 245, an applicant must:

- Be inspected and admitted or paroled into the United States;
- Be eligible to receive an immigrant visa;
- Be admissible to the United States for permanent residence; and
- Have an immigrant visa immediately available at the time the application is filed.

### Statement of Facts and Analysis, Including Ground(s) for Denial

You filed Form I-485 based on being beneficiary of an immigrant petition, filed on your behalf by your spouse, Dwight Davidson Liu. Form I-130 was approved by USCIS on February 7, 2020.

On January 15, 2020, you appeared for an interview to determine your eligibility for adjustment of status. During the interview and review of your application with an Immigration Services Officer, you testified that the information on your Form I-485, along with any amendments made during the adjustment interview, and supporting documents were true and correct.

On February 21, 2020, USCIS issued a Notice of Intent to Deny (NOID). Through your attorney of record, you submitted a timely response to the NOID on March 2, 2020.

In the response your attorney asserts the following;

- "Ms. Kanai last departed the U.S. in January 2006 thus she is not seeking admission within 10 years of the date of her departure from the United States. Therefore she is not inadmissible"

  > [I]n interpreting a statue a court should always turn to one, cardinal canon before all others. We have stated time and again that courts must presume that a legislature says what it means and means in a statue what it says there. When the words of a statue are unambiguous, then, this first canon is also the las: judicial inquiry is complete. See Connecticut National Bank v. Germain, 503 U.S. 249, 253-254 (1992)

- "Accordingly, the USCIS must likewise presume that the Congress said what it meant and meant what it said in INA 212(a)(9)(B)(i)(II). Inasmuch as the words of the statute are unambiguous, therefore this first canon is also the last and the administrative inquiry is complete. Ms. Kanai is no longer inadmissible to the United States because it has been more than 10 years since her departure following her last overstay."

- "Therefore, had Congress intended that a person must be outside the U.S. through her period of inadmissibility, it could have expressed that intent by providing that INA 212(a)(9)(B)(i)(II) didn't apply to a person seeking admission more than 10 years after her last departure if she was seeking reembarkation at a place outside of the U.S. or attempting to be readmitted from a foreign contiguous territory"

- "Where Congress includes particular language in one section of a statute but omits it in another section of the same statute, it is generally presumed that Congress acts intentionally in the inclusion or exclusion. Therefore it should be presumed that Congress acted intentionally when it failed to include in INA 212(a)(9)(B) the language it used in INA 212(a)(9)(C) to ensure that a person inadmissible under that section had to remain outside the U.S. for at least 10 years before seeking readmission. Accordingly, Ms. Kanai is not now, and has not been since January 2016, inadmissible to the U.S."

USCIS records and your testimony establish that you entered the United States as a visitor for pleasure admitted under the Visa Waiver Program (VWP) on or about September of 1995 and departed on or about December of 1995. You reentered the United States as a visitor for pleasure admitted under the Visa Waiver Program (VWP) on an unknown month in 1996. You were authorized to remain in the United States for 90 days in accordance with the VWP. However, you remained in the United States until an unknown month in 2003, at which time you departed. You were unlawfully present in the United States for a period of more than one year. You then reentered the United States as a visitor for pleasure admitted under the Visa Waiver Program (VWP) on or about November 4, 2005 and have not departed.

You were unlawfully present in the United States for a period of more than one year, then voluntarily departed in 2003. Thus, you accrued more than one year of unlawful presence in the United States from 1996 to 2003. Since you did not obtain an advance parole document prior to leaving the United States, your leaving the United States counts as a "departure" for purposes of inadmissibility. See *Matter of Arrabally*, 25 I&N Dec. 771 (BIA 2012). Therefore, you are inadmissible to the United States.

Acquiring more than one year of unlawful presence followed by a departure from the United States renders an individual inadmissible for ten years from the date of such departure. See INA 212(a)(9)(B)(i)(II). In your case, the period of inadmissibility would have continued until 2013, but was tolled when you were admitted to the United States on November 4, 2005 as a visitor for

2

pleasure under the VWP without an INA 212(d)(3) waiver of inadmissibility. Although your return was a procedurally regular "admission" pursuant to *Matter of Quilantan*, 25 I&N Dec. 285 (BIA 2010), it was not substantively lawful in view of the existing unlawful presence ground of inadmissibility, which precludes your admissibility now for purposes of INA 245(a)(2). For your admission to have been substantively lawful, you would have had to obtain a waiver of nonimmigrant inadmissibility under INA 212(d)(3) at the time of your entry on November 4, 2005. *Cf.* 8 CFR 212.2(a) ("A temporary stay in the United States under section 212(d)(3) of the Act does not interrupt the five or twenty consecutive year absence requirement."); *see also,* Memo, Donald Neufeld, Acting Associate Director, Consolidation of Guidance Concernign Unlawful Presence for Purposes of Sections 212(a)(9)(B)(i) and 212(a)(9)(C)(i)(I) of the Act, at 46 (May 6, 2009).

The record currently contains no evidence that you obtained a section 212(d)(3) waiver of inadmissibility. Thus, while your admission was procedurally regular, your admission was substantively unlawful and therefore tolled the running of the 10 year bar to admissibility under INA 212(a)(9)(B)(i)(II).

An applicant seeking adjustment of status must establish admissibility "clearly and beyond doubt." *Matter of Bett*, 26 I&N Dec. 437, 440 (BIA 2014). The current record does not include evidence that you obtained a section 212(d)(3) waiver in order to return to the United States lawfully on November 4, 2005, thereby preventing your inadmissibility period from continuing to run while you are physically present in the United States.

You assert that the mere passage of 10 years since a prior departure means that admission would no longer be barred by INA 212(a)(9)(B)(i)(II), even if one has spent most of that time in the United States after a substantively unlawful admission, followed by a new period of unauthorized stay. On this issue, the statute either refutes your contention or is silent, such that the expertise of the agency interpreting the provision is entitled to deference. *See INS v. Aguirre-Aguirre*, 526 U.S. 415, 424-25 (1999); *Chevron, U.S.A., Inc. v. NRDC*, 467 U.S. 837, 842-44 (1984); *see also Abramski v. United States*, 134 S. Ct. 2259, 2267 (2014) (explaining that statutory terms must be interpreted "with reference to the statutory context, 'structure, history, and purpose'") (citation omitted). The purpose of INA 212(a)(9)(B)(i) is to impose a civil sanction for previously remaining in the United States contrary to law. Your argument would mean that one can avoid this civil sanction simply by returning to the United States in a procedurally regular manner, although in an unlawful manner, and then waiting out the 10 year period here (and doing so, largely, in a lapsed and therefore unlawful status). In other words, your interpretation would create a perverse incentive: violating the law again would allow one to escape the sanction for the original violation. That is an "absurd result" that the statute could not have intended. *See, e.g., Griffin v. Oceanic Contractors,* 458 U.S. 564, 575 (1982). The legislative and regulatory history amply supports rejecting that view. *See id.* at 575 ("interpretations of a statute which would produce absurd results are to be avoided if alternative interpretations consistent with the legislative purpose are available").

Congress enacted INA 212(a)(9)(B) through section 301(b)(1) of the Illegal Immigration Reform and Immigrant Responsibility Act of 1996 (IIRAIRA), Pub. L. No. 104-208, Division C, 110 Stat. 3009-575 to -577 (1996). IIRAIRA also essentially renumbered as INA 212(a)(9)(A)(i) and (ii) two long-standing inadmissibility grounds that had previously been INA 212(a)(6)(A) and (B). Before that, they were INA 212(a)(16) and (17) in the INA as enacted in 1952. The origin of INA 212(a)(9)(A) is even older than that, having first been enacted through the 1917 Immigration Act, Pub. L. No. 64-301, 39 Stat. 874, 876 (1917). The only significant difference between INA 212(a)(9)(A) and its precursors is the *length* of the inadmissibility period.

This related inadmissibility provision, INA 212(a)(9)(A), renders inadmissible certain aliens previously excluded, deported or removed from the United States for a specified period of time unless the alien receives USCIS's consent to reapply for admission (the "consent to reapply" period). USCIS notes that the language "again seeks admission within" a specified period after exclusion, deportation, removal or departure is the same in INA 212(a)(9)(A) and (B). The same construct was largely in former INA 212(a)(6)(A) and (B), in former INA 212(a)(16), and in the 1917 Act. The presumption is that that language – "seeks admission within" – means the same thing in each provision. It is this parallel construction of sections 212(a)(9)(A) and 212(a)(9)(B) that allows the interpretation of INA 212(a)(9)(A) to inform interpretation of the more recent addition to the INA, section 212(a)(9)(B).

When Congress reenacts an existing provision without substantive changes, and, at the same time, enacts a new provision in the same statute using the wording of the existing provision, it is presumed that Congress intended to adopt the existing and administratively settled interpretation. *See Lorillard v. Pons*, 434 U.S. 575, 580 (1979). It has been settled since at least 1982 that an alien who has been removed must remain outside the United States for a consecutive period equal to the "consent to reapply" period (absent receiving official consent to seek admission), in order to be relieved of inadmissibility under what is now section 212(a)(9)(A). 8 CFR 212.2(a); 47 Fed. Reg. 12129 (1982). The final rule made clear that returning *unlawfully* before the end of the consent to reapply period "is interruptive" of the consent to reapply period. 47 Fed. Reg. 44,233, 44,233 (1982). The inadmissibility period does continue to run, however, if the alien returns *lawfully* with an INA 212(d)(3) waiver. *Cf.* 8 CFR 212.2(a) ("…A temporary stay in the United States under section 212(d)(3) of the Act does not interrupt the five or twenty consecutive year absence requirement.").

Congress is presumed to know the settled meaning of a concept, and to intend that meaning to apply to a new use of the concept. *See Goodyear Atomic Corp. v. Miller*, 486 U.S. 174, 184-85 (1988) (Congress is "generally presume[d]…knowledgeable about existing law pertinent to the legislation it enacts."). In light of the interpretive history of section 212(a)(9)(A), and the similar "again seeks admission within" language in section 212(a)(9)(B)(i) and (ii), USCIS concludes that an alien who is inadmissible under section 212(a)(9)(B) must remain outside the United States for a consecutive period of 3 or 10 years in order to be relieved of inadmissibility or, during the relevant period, return lawfully to the United States with an INA 212(d)(3) waiver in order to wait out the relevant inadmissibility period from within the United States.

This conclusion is bolstered by the overall structure of the 1996 amendments to INA 212(a)(9). Congress's amendments that year created a tiered system for addressing the multiple, related problems of aliens who had previously been removed and again sought admission; aliens who had previously been in the United States unlawfully and sought to return; and aliens who had been removed or previously present unlawfully and who nevertheless again returned or attempted to return unlawfully. *See* INA 212(a)(9)(A), (B), (C). Regarding the first group, further gradations of penalties exist but generally INA 212(a)(9)(A) creates several periods of mostly limited duration during which, if a removed alien wishes to seek admission again to the United States, he must obtain official consent to do so. *See* INA 212(a)(9)(A)(iii). Apart from prior removals, aliens with prior unlawful presence in the United States are barred from readmission for certain periods, unless he obtains a waiver on which Congress imposed substantial constraints on official discretion to grant. *See* INA 212(a)(9)(B)(v) (requiring not merely "consent" to allow application for admission, but a showing of extreme hardship, and only to certain relatives, if the alien were denied admission). Finally, in the case of an alien who not only has either a prior removal order or unlawful presence, but who has also entered or attempts to reenter the United States without being admitted, officials generally have no ability at all to excuse the resulting bar to admissibility that exists for a ten-year period. *See* INA 212(a)(9)(C)(ii); *see also In re Torres-*

*Garcia*, 23 I. & N. Dec. 866, 873 (BIA 2006) ("A request for a waiver of the section 212(a)(9)(C)(i)(II) ground of inadmissibility that is made less than 10 years after the alien's last departure from the United States simply cannot be granted."). It is apparent from this framework that Congress intended not only to implement escalating levels of punishment for conduct associated with prior removals, unlawful presence, and illegal entry, but also to limit increasingly the extent to which punishment could be excused by officials in certain instances. Within this framework, it would make no sense whatsoever if an alien with prior unlawful presence could simply avoid not only the bar to inadmissibility but also the constraints on excusing this particular bar simply by leaving the United States, then returning in a manner that paid no heed whatsoever to these limitations, and then remained in the United States in a mostly unauthorized (and therefore unlawful) immigration status for the supposed duration of the period of inadmissibility. Such a result would clearly frustrate Congress's purpose in the way in which it designed INA 212(a)(9) in 1996.

An applicant seeking adjustment of status must establish admissibility "clearly and beyond doubt." *Matter of Bett*, 26 I&N Dec. 437, 440 (BIA 2014). The current record does not include evidence that you obtained a section 212(d)(3) waiver in order to return to the United States lawfully on November 4, 2005, thereby preventing your inadmissibility period from continuing to run while you are physically present in the United States.

You are not qualified to adjust status, and USCIS denies your Form I-485. See INA 212(a)(9)(B) and INA 245(a)(2).

The evidence of record shows that, when you filed your application, you were present in the United States contrary to law. You are not authorized to remain in the United States. If you fail to depart the United States within 33 days of the date of this letter, USCIS may issue you a Notice to Appear and commence removal proceedings against you with the immigration court. This may result in your being removed from the United States and found ineligible for a future visa or other U.S. immigration benefit. See sections 237(a) and 212(a)(9) of the INA.

To review information regarding your period of authorized stay, check travel compliance, or find information on how to validate your departure from the United States with Customs and Border Protection (CBP), please see (https://i94.cbp.dhs.gov/I94/#/home).

You may not appeal this decision. However, if you believe that the denial of your Form I-485 is in error, you may file a motion to reopen or a motion to reconsider using Form I-290B, Notice of Appeal or Motion. The grounds for a Motion to Reopen and Motion to Reconsider are explained in 8 CFR 103.5(a). You must file Form I-290B within 30 days of the date of this decision if this decision was served in person, or within 33 days if the decision was served by mail. See 8 CFR 103.5(a) and 103.8(b). Note: You must follow the most current filing instructions for Form I-290B, which can be found at www.uscis.gov.

To access Form I-290B or if you need additional information, please visit the USCIS Web site at www.uscis.gov or call the USCIS Contact Center toll free at 1-800-375-5283.

**NOTE on Employment Authorization:** Any employment authorization based upon this Form I-485 is automatically terminated if the expiration date on the employment authorization document has been reached. See 8 CFR 274a.14(a)(1)(i). Since this Form I-485 is denied, the condition upon which your employment authorization was based no longer exists. Therefore, USCIS has determined that any pending Form I-765, Application for Employment Authorization, related to the Form I-485 is also denied. In addition, any unexpired employment authorization based upon this Form I-485 is revoked as of 18 days from the date of this notice, unless you submit, within 18

days, proof that your Form I-485 remains pending. See 8 CFR 274a.14(b)(2). The decision shall be final and no appeal shall lie from the decision to revoke the authorization. Your employment authorization document should be returned to the local USCIS office.

**NOTE on Advance Parole Document:** Any advance parole document based upon this Form I-485 is automatically terminated if the expiration date of the time for which parole was authorized has been reached. See 8 CFR 212.5(e)(1)(ii). Since this Form I-485 is denied, the purpose for which your advance parole document was issued has been accomplished. Therefore, USCIS has determined that any pending Form I-131, Application for Travel Document, related to the Form I-485 is also denied. In addition, any unexpired advance parole document issued to you based upon this Form I-485 is terminated as of the date of this notice. See 8 CFR 212.5(e)(2)(i). Your advance parole document should be returned to the local USCIS office.

Sincerely,

Nancy J. Alby
Field Office Director
Signed for by:
LACISO2024
cc: Linda Lee
Immigration Law Office of Los Angeles
3415 S. Sepulveda Blvd. Ste. 570
Los Angeles, CA 90034

6

## Attachment
### (Applicable Law/Regulations)

INA 245

ADJUSTMENT OF STATUS OF NONIMMIGRANT TO THAT OF PERSON ADMITTED
FOR PERMANENT RESIDENCE
(a) The status of an alien who was inspected and admitted or paroled into the United States or the
status of any other alien having an approved petition for classification as a VAWA self-petitioner
may be adjusted by the Attorney General, in his discretion and under such regulations as he may
prescribe, to that of an alien lawfully admitted for permanent residence if
(1) the alien makes an application for such adjustment,
(2) the alien is eligible to receive an immigrant visa and is admissible to the United States for
permanent residence, and
(3) an immigrant visa is immediately available to him at the time his application is filed.


INA 212(a)

CLASSES OF ALIENS INELIGIBLE FOR VISAS OR ADMISSION

(9)(B) Aliens Unlawfully Present.

(i) In general. Any alien (other than an alien lawfully admitted for permanent residence) who-

(I) was unlawfully present in the United States for a period of more than 180 days but less than 1
year, voluntarily departed the United States (whether or not pursuant to section 244(e) ) prior to
the commencement of proceedings under section 235(b)(1) or section 240 , and again seeks
admission within 3 years of the date of such alien's departure or removal, or

(II) has been unlawfully present in the United States for one year or more, and who again seeks
admission within 10 years of the date of such alien's departure or removal from the United States,
is inadmissible.

(ii) Construction of unlawful presence. For purposes of this paragraph, an alien is deemed to be
unlawfully present in the United States if the alien is present in the United States after the
expiration of the period of stay authorized by the Attorney General or is present in the United
States without being admitted or paroled.

(iii) Exceptions.

(I) Minors. No period of time in which an alien is under 18 years of age shall be taken into
account in determining the period of unlawful presence in the United States under clause (I).

(II) Asylees. No period of time in which an alien has a bona fide application for asylum pending
under section 208 shall be taken into account in determining the period of unlawful presence in
the United States under clause (i) unless the alien during such period was employed without
authorization in the United States.

(III) Family unity. No period of time in which the alien is a beneficiary of family unity protection
pursuant to section 301 of the Immigration Act of 1990 14/ shall be taken into account in
determining the period of unlawful presence in the United States under clause (I).

(IV) Battered women and children. Clause (i) shall not apply to an alien who would be described in paragraph (6)(A)(ii) if "violation of the terms of the alien's nonimmigrant visa" were substituted for "unlawful entry into the United States" in sub-clause (III) of that paragraph.

(V) VICTIMS OF A SEVERE FORM OF TRAFFICKING IN PERSONS Clause (i) shall not apply to an alien who demonstrates that the severe form of trafficking (as that term is defined in section 103 of the Trafficking Victims Protection Act of 2000 (22 U.S.C. 7102)) was at least one central reason for the alien's unlawful presence in the United States.

(iv) Tolling for good cause. In the case of an alien who

(I) has been lawfully admitted or paroled into the United States,

(II) has filed a non-frivolous application for a change or extension of status before the date of expiration of the period of stay authorized by the Attorney General, and

(III) has not been employed without authorization in the United States before or during the pendency of such application, the calculation of the period of time specified in clause (i)(I) shall be tolled during the pendency of such application, but not to exceed 120 days.

(v) Waiver. The Attorney General has sole discretion to waive clause (i) in the case of an immigrant who is the spouse or son or daughter of a United States citizen or of an alien lawfully admitted for permanent residence, if it is established to the satisfaction of the Attorney General that the refusal of admission to such immigrant alien would result in extreme hardship to the citizen or lawfully resident spouse or parent of such alien. No court shall have jurisdiction to review a decision or action by the Attorney General regarding a waiver under this clause.


8 CFR 245.2

(5) Decision --

(i) General. The applicant shall be notified of the decision of the director and, if the application is denied, the reasons for the denial.

(ii) Under section 245 of the Act. If the application is approved, the applicant's permanent residence shall be recorded as of the date of the order approving the adjustment of status. An application for adjustment of status, as a preference alien, shall not be approved until an immigrant visa number has been allocated by the Department of State. No appeal lies from the denial of an application by the director, but the applicant, if not an arriving alien, retains the right to renew his or her application in proceedings under 8 CFR part 240 . Also, an applicant who is a parolee and meets the two conditions described in § 245.2(a)(1) may renew a denied application in proceedings under 8 CFR part 240 to determine admissibility. At the time of renewal of the application, an applicant does not need to meet the statutory requirement of section 245(c) of the Act, or § 245.1(g) , if, in fact, those requirements were met at the time the renewed application was initially filed with the director. Nothing in this section shall entitle an alien to proceedings under section 240 of the Act who is not otherwise so entitled

8 CFR 103.5

(a) Motions to reopen or reconsider in other than special agricultural worker and legalization cases—

(1) When filed by affected party—

(i) General. Except where the Board has jurisdiction and as otherwise provided in 8 CFR parts 3, 210, 242 and 245a, when the affected party files a motion, the official having jurisdiction may, for proper cause shown, reopen the proceeding or reconsider the prior decision. Motions to reopen or reconsider are not applicable to proceedings described in § 274a.9 of this chapter. Any motion to reconsider an action by the Service filed by an applicant or petitioner must be filed within 30 days of the decision that the motion seeks to reconsider. Any motion to reopen a proceeding before the Service filed by an applicant or petitioner, must be filed within 30 days of the decision that the motion seeks to reopen, except that failure to file before this period expires, may be excused in the discretion of the Service where it is demonstrated that the delay was reasonable and was beyond the control of the applicant or petitioner.

(ii) Jurisdiction. The official having jurisdiction is the official who made the latest decision in the proceeding unless the affected party moves to a new jurisdiction. In that instance, the new official having jurisdiction is the official over such a proceeding in the new geographical locations.

(iii) Filing Requirements—A motion shall be submitted on Form I-290B and may be accompanied by a brief. It must be:

(A) In writing and signed by the affected party or the attorney or representative of record, if any;

(B) Accompanied by a nonrefundable fee as set forth in § 103.7;

(C) Accompanied by a statement about whether or not the validity of the unfavorable decision has been or is the subject of any judicial proceeding and, if so, the court, nature, date, and status or result of the proceeding;

(D) Addressed to the official having jurisdiction; and

(E) Submitted to the office maintaining the record upon which the unfavorable decision was made for forwarding to the official having jurisdiction.

(iv) Effect of motion or subsequent application or petition. Unless the Service directs otherwise, the filing of a motion to reopen or reconsider or of a subsequent application or petition does not stay the execution of any decision in a case or extend a previously set departure date.

(2) Requirements for motion to reopen. A motion to reopen must state the new facts to be proved in the reopened proceeding and be supported by affidavits or other documentary evidence. A motion to reopen an application or petition denied due to abandonment must be filed with evidence that the decision was in error because:

(i) The requested evidence was not material to the issue of eligibility;

(ii) The required initial evidence was submitted with the application or petition, or the request for initial evidence or additional information or appearance was complied with during the allotted period; or

(iii) The request for additional information or appearance was sent to an address other than that on the application, petition, or notice of representation, or that the applicant or petitioner advised the Service, in writing, of a change of address or change of representation subsequent to filing and before the Service's request was sent, and the request did not go to the new address.

(3) Requirements for motion to reconsider. A motion to reconsider must state the reasons for reconsideration and be supported by any pertinent precedent decisions to establish that the decision was based on an incorrect application of law or Service policy. A motion to reconsider a decision on an application or petition must, when filed, also establish that the decision was incorrect based on the evidence of record at the time of the initial decision.

(4) Processing motions in proceedings before the Service. A motion that does not meet applicable requirements shall be dismissed. Where a motion to reopen is granted, the proceeding shall be reopened. The notice and any favorable decision may be combined.

8 CFR 103.8

(b) Effect of service by mail. Whenever a person has the right or is required to do some act within a prescribed period after the service of a notice upon him and the notice is served by mail, 3 days shall be added to the prescribed period. Service by mail is complete upon mailing.

8 CFR 212.5(e)

(1) Automatic. Parole shall be automatically terminated without written notice
(i) upon the departure from the United States of the alien, or
(ii) if not departed, at the expiration of the time for which parole was authorized, and in the latter case the alien shall be processed in accordance with paragraph (e)(2) of this section except that no written notice shall be required.
(2)(i) On notice. In cases not covered by paragraph (e)(1) of this section, upon accomplishment of the purpose for which parole was authorized or when in the opinion of the district director or chief patrol agent in charge of the area in which the alien is located, the Deputy Executive Associate Commissioner for Detention and Removal, or the Director of the Office of Juvenile Affairs, neither humanitarian reasons nor public benefit warrants the continued presence of the alien in the United States, parole shall be terminated upon written notice to the alien and he or she shall be restored to the status that he or she had at the time of parole. When a charging document is served on the alien, the charging document will constitute written notice of termination of parole, unless otherwise specified. Any further inspection or hearing shall be conducted under section 235 or 240 of the Act and this chapter, or any order of exclusion, deportation, or removal previously entered shall be executed. If the exclusion, deportation, or removal order cannot be executed within a reasonable time, the alien shall again be released on parole unless in the opinion of the district director, chief patrol agent, the Deputy Executive Associate Commissioner for Detention and Removal, or the Director of the Office of Juvenile Affairs the public interest requires that the alien be continued in custody.

8 CFR 274a.14

(a) Automatic termination of employment authorization.
(1) Employment authorization granted under § 274a.12(c) of this chapter shall automatically terminate upon the occurrence of one of the following events:
(i) The expiration date specified by the Service on the employment authorization document is reached;
(ii) Exclusion or deportation proceedings are instituted (however, this shall not preclude the authorization of employment pursuant to § 274a.12(c) of this part where appropriate); or
(iii) The alien is granted voluntary departure.
(2) Termination of employment authorization pursuant to this paragraph does not require the service of a notice of intent to revoke; employment authorization terminates upon the occurrence of any event enumerated in paragraph (a)(1) of this section. However, automatic revocation under this section does not preclude reapplication for employment authorization under § 274a.12(c) of this part.
(b) Revocation of employment authorization--
(1) Basis for revocation of employment authorization. Employment authorization granted under Sec. 274a.12(c) of this chapter may be revoked by the district director:
(i) Prior to the expiration date, when it appears that any condition upon which it was granted has not been met or no longer exists, or for good cause shown; or
(ii) Upon a showing that the information contained in the application is not true and correct.
(2) Notice of intent to revoke employment authorization. When a district director determines that employment authorization should be revoked prior to the expiration date specified by the Service, he or she shall serve written notice of intent to revoke the employment authorization. The notice

10

will cite the reasons indicating that revocation is warranted. The alien will be granted a period of fifteen days from the date of service of the notice within which to submit countervailing evidence. The decision by the district director shall be final and no appeal shall lie from the decision to revoke the authorization.