UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

CIVIL MINUTES - GENERAL

| | | | |
|---|---|---|---|
| Case No. | 20-CV-05345-CBM-(KSx) | Date | June 25, 2020 |
| Title | *Yayomi Kanai v. United States Department of Homeland Security, et al.* | | |

| | |
|---|---|
| Present: The Honorable | CONSUELO B. MARSHALL, UNITED STATES DISTRICT JUDGE |

| YOLANDA SKIPPER | NOT REPORTED |
|---|---|
| Deputy Clerk | Court Reporter |

| Attorneys Present for Plaintiff: | Attorneys Present for Defendant: |
|---|---|
| NONE PRESENT | NONE PRESENT |

**Proceedings:** **IN CHAMBERS- ORDER RE DKT. NO. 2 AND 3**

The matters before the Court are Plaintiff Yayomi Kanai's *Ex Parte* Application for a Temporary Restraining Order (the "TRO") and motion to waive notice to Defendants United States Department of Homeland Security ("DHS") and the United States Citizenship and Immigration Services ("USCIS") of the TRO (the "Motion"). (*See* Dkt. No. 2 (TRO); Dkt. No. 3 (Mot.).) Plaintiff has not served or otherwise notified Defendants of the TRO or the Motion.

### BACKGROUND

In this action, Plaintiff seeks an order from this Court holding unlawful and setting aside a decision by USCIS denying permanent residency to Plaintiff. (Dkt. No. 1 (Compl.) at ¶ 1.)

Plaintiff is a citizen of Japan. (Compl. at ¶ 3.) In 1996, Plaintiff entered the United States under the Visa Waiver Program ("VWP") as a visitor for pleasure, and was authorized to remain in the country for 90 days. (TRO, Exh. A at p. 2.) Plaintiff remained in the United States until 2003. (Id.) Plaintiff again entered the United States under the VWP on or about November 4, 2005, and has not departed the country since then. (Id. at p. 2-3.)

Plaintiff recently married Dwight Liu, a U.S. citizen with whom Plaintiff has lived for over 10 years. (Compl. at ¶ 3; *see also* TRO at p. 3.) Accordingly, Plaintiff applied to adjust her status to that of a lawful permanent resident on the ground that she is an "[i]mmediate relative of a U.S. citizen" pursuant to 8 U.S.C. § 1255. (TRO, Exh. B at p. 50.) To adjust status to a lawful permanent resident, an alien must be admissible. *See* 8 U.S.C. § 1255(a).

On May 12, 2020, USCIS issued a decision denying Plaintiff's adjustment-of-status application. (TRO, Exh. A (the "Decision") at p. 1.) In the decision, USCIS found Plaintiff was unlawfully present in the United States for a period of more than one year, from 1996 to 2003. (Id. at p. 2.) Because Plaintiff did not obtain an "advance parole document" before she left the United States in 2003, USCIS determined this "counts as a 'departure' for purposes of inadmissibility." (Id.) USCIS held Plaintiff's application was barred by 8 U.S.C. §

1182(a)(9)(B)(i)(II), which provides: "Any alien (other than an alien lawfully admitted for permanent residence) who … has ben unlawfully present in the United States for one year or more, and who again seeks admission within 10 years of the date of such alien's departure from the United States, is inadmissible." USCIS reasoned that the period of inadmissibility for Plaintiff began to run when she departed the United States in 2003, but was tolled when Plaintiff was "admitted to the United States on November 4, 2005 as a visitor for pleasure under the VWP[.]" (TRO, Exh. A at p. 2-3.) According to USCIS, because Plaintiff was inadmissible at the time she received the VWP in 2005 and failed to obtain a waiver of inadmissibility under 8 U.S.C. § 1182(d)(3), her admission into the United States was "substantively unlawful and therefore tolled the running of the 10-year bar to admissibility under [8 U.S.C. § 1182(a)(9)(B)(i)(II)]." (Id. at p. 3.) USCIS advised Plaintiff to depart the United States within 33 days or be subject to "removal proceedings against [her] with the immigration court." (Id.)

Plaintiff now moves for an order temporarily restraining the DHS "and/or its officers, employees or agents from issuing an order to remove her from the United States[.]" (TRO at p. 1.)

## **JURISDICTION**

Plaintiff contends this court has subject matter jurisdiction over this action under the Administrative Procedure Act ("APA"), 5 U.S.C. §§ 551 *et seq.*, and 28 U.S.C. § 1331. (*See* Dkt. No. 18 (Pls.' Response to Order to Show Cause) at p. 1; *see also* Compl. ¶ 16.) The Court agrees. A district court may review a "final agency action for which there is no other adequate remedy in a court," under 28 U.S.C. § 1331. *See Gallo Cattle Co. v. U.S. Dep't of Agriculture*, 159 F.3d 1194, 1198 (9th Cir. 1998); *see also Navajo Nation v. Dep't of the Interior*, 876 F.3d 1144, 1170-1172 (9th Cir. 2017). "Agency action is 'final' if a minimum of two conditions are met: '[f]irst, the action must mark the consummation of the agency's decision making process … it must not be of a merely tentative or interlocutory nature. And second, the action must be one by which rights or obligations have been determined, or from which legal consequences will follow.'" *Gallo*, 159 F.3d at 1198-1199 (quoting *Western Radio Servs. Co. v. Glickman*, 123 F.3d 1189, 1196 (9th Cir. 1997) (brackets and ellipsis in original).

The decision of the USCIS denying Plaintiff's adjustment-of-status application was a final agency action. *First*, there can be no dispute that the decision of the USCIS was one from which legal consequences flow, as USCIS denied the adjustment of status, determined Plaintiff was "not authorized to remain in the United States," and provided her thirty-three (33) days from the issuance of the decision to depart. (TRO, Exh. A at p. 5.) *Second*, the decision was neither tentative nor interlocutory. Plaintiff avers she "has no right to a hearing before an immigration judge" because she waived any right to appeal by entering the country through the VWP, *see* 8 U.S.C. § 1187(b) (waiver of rights), and "therefore has no means of seeking review" of the decision of the USCIS except in federal court. (Dkt. No. 18 at p. 2.) *Mamigonian v. Biggs*, 710 F.3d 936, 938 (9th Cir. 2013) is instructive. In that case, the Ninth Circuit held "district courts have jurisdiction to hear cases challenging determinations made on nondiscretionary grounds respecting eligibility for the immigration benefits enumerated in 8 U.S.C. § 1252(a)(2)(B)(i), provided there are no pending removal proceedings in which an alien could apply for such benefits." *Id.* Petitions for adjustment-of-status under 8 U.S.C. § 1255, such as the petition at issue here, are within those enumerated benefits. Moreover, USCIS's denial of the application under 8 U.S.C. § 1182(a)(9)(B)(i)(II) was based on statutory eligibility and therefore appears to be nondiscretionary, and there are no removal proceedings pending against Plaintiff in the record.

## **LEGAL STANDARD**

Federal Rule of Civil Procedure 65(b)(1) provides:

> The court may issue a temporary restraining order without written or oral notice to the adverse party or its attorney only if: (A) specific facts in an affidavit … clearly show that immediate and irreparable injury, loss, or damage will result to the movant before the adverse party can be heard in opposition; and (B) the movant's

> attorney certifies in writing any efforts made to give notice and the reasons why it should not be required.

Fed. R. Civ. P. 65(b)(1). If the application for a TRO satisfies Rule 65(b), then the Court must analyze the merits of the requested TRO. The standard for issuing a TRO is similar to the standard for issuing a preliminary injunction, and requires the party seeking relief to show (1) that he is likely to succeed on the merits, (2) that he is likely to suffer irreparable harm in the absence of injunctive relief, (3) that the balance of equities is in his favor, and (4) that injunctive relief is in the public interest. *See Winter v. Nat. Res. Def. Council*, 555 U.S. 7, 20 (2008).

Under this standard, "serious questions going to the merits and a balance of hardships that tips sharply towards the plaintiff can support the issuance of a preliminary injunction, so long as the plaintiff also shows that there is a likelihood of irreparable injury and that the injunction is in the public interest." *All. for the Wild Rockies v. Cottrell*, 632 F.3d 1127, 1135 (9th Cir. 2011) (internal quotations omitted). Temporary restraining orders "should be restricted to serving their underlying purpose of preserving the status quo and preventing irreparable harm just so long as is necessary to hold a hearing, and no longer." *Granny Goose Foods, Inc. v. Bhd. of Teamsters & Auto Truck Drivers Local No. 70 of Alameda Cty.*, 415 U.S. 423, 439 (1974).

## DISCUSSION

### A.   The TRO satisfies Rule 65(b)

Plaintiff requests this Court issue the TRO without written or oral notice to Defendants DHS and USCIS. (*See* Dkt. No. 3 (Mot.) at p. 1 (Plaintiff "moves the Court pursuant to L.R. 7-19.2 to waive notice to the opposing parties or their counsel of her ex parte motion for a temporary restraining order…").) Therefore, the Court may issue the TRO only if counsel for Plaintiff certifies in writing any efforts made to give notice and the reasons why it should not be required, and provides specific facts in an affidavit that Plaintiff will suffer immediate and irreparable injury before Defendants can be heard. *See* Fed. R. Civ. P. 65(b).

According to Plaintiff's counsel, Plaintiff may "be removed from the United States at any time" (TRO at p. 21), and notice to Defendants will likely result in her removal before a preliminary injunction can be heard. Because Plaintiff suffers the risk of removal before a motion for a preliminary injunction may be heard, she has satisfied the requirement of Rule 65(b)(1)(B).

Plaintiff has also satisfied the requirement of Rule 65(b)(1)(A). Although it was not included in her initial TRO application, Plaintiff filed a declaration from her counsel, Michael A. Piston, which declares Plaintiff faces irreparable harm because she will be subject to immediate deportation and abandonment of her adjustment-of-status-application, and separation from her husband. (*See* Dkt. No. 22.)

Therefore, the TRO satisfies the requirements of Rule 65(b).

### B.   Merits of the TRO

The Court must analyze whether Plaintiff meets her burden to demonstrate her entitlement to immediate injunctive relief on her claims. The Complaint asserts: (1) a claim under 5 U.S.C. § 706 for judicial review of the decision of the USCIS denying Plaintiff's adjustment-of-status application; and (2) a "claim to compel agency action unlawfully withheld" based on USCIS allegedly wrongful denial of the adjustment-of-status application. (Compl. ¶¶ 18-20.) Plaintiff requests this Court to hold unlawful and set aside the decision of the USCIS, and to order USCIS to reevaluate the adjustment-of-status application.

#### (1)   Likelihood of Success on the Merits

The APA provides, in relevant part:

> To the extent necessary to decision and when presented, the reviewing court shall decide all relevant questions of law, interpret constitutional and statutory provisions, and determine the meaning or applicability of the terms of an agency action. The reviewing court shall –
>
>> (1) compel agency action unlawfully withheld or unreasonably delayed; and
>> (2) hold unlawful and set aside agency action, findings, and conclusions found to be –
>>> (A) arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with the law; …
>>> (B) in excess of statutory jurisdiction, authority, or limitations, or short of statutory right[.]

5 U.S.C. § 706. Under the arbitrary and capricious standard, the court will "sustain an agency action if the agency has articulated a rational connection between the facts found and the conclusions made." *San Luis & Delta Mendota Water Authority v. Locke*, 776 F.3d 971, 994 (9th Cir. 2014). "The arbitrary or capricious standard is a deferential standard of review under which the agency's action carries a presumption of regularity." *Id.* The reviewing court must assess whether the agency decision "was based on a consideration of the relevant factors and whether there has been a clear error of judgment[.]" *Dep't of Homeland Security Regents of the University of California*, ---- S. Ct. ----, 2020 WL 3271746, at *7 (Sup. Ct. 2020) (citation omitted).

USCIS held in part: "In [Plaintiff's] case, the period of inadmissibility would have continued until 2013, but was tolled when [Plaintiff was] admitted to the United States on November 4, 2005 as a visitor for pleasure under the VWP without an INA 212(d)(3) waiver of admissibility." (Decision at p. 3.) USCIS concluded that "although [Plaintiff's] admission [in 2005] was procedurally regular, [her] admission was substantively unlawful and therefore tolled the running of the 10 year bar to admissibility under INA 212(a)(9)(B)(i)(II)." (Id.) Plaintiff argues the USCIS erroneously decided that the 10-year inadmissibility period was tolled when Plaintiff made a substantively unlawful reentry to the United States in 2005, after departing in 2003.

The plain language of 8 U.S.C. § 1182(a)(9)(B)(i)(II) does not provide for tolling of the period of inadmissibility. Rather, the statute makes inadmissible an "alien (other than an alien lawfully admitted for permanent residence) who … has been unlawfully present in the United States for one year or more, and who again seeks admission within 10 years of the date of such alien's departure or removal from the United States[.]" 8 U.S.C. § 1182(a)(9)(B)(i)(II). Based on this language, the period of inadmissibility begins to run after the alien departs the United States, without regard to a subsequent reentry. Therefore, because USCIS determined Plaintiff departed the United States in 2003, the period of inadmissibility expired in 2013.

USCIS reasoned that Plaintiff's reentry to the United States in 2005 tolled the period of inadmissibility by analogy to 8 C.F.R. § 212.2(a) ("A temporary stay in the United States under section 212(d)(3) of the Act does not interrupt the five or twenty consecutive year absence requirement."). Section 212.2(a), however, applies to aliens who have been deported or removed from the United States. In this case, Plaintiff voluntarily departed the United States, and was not deported or removed.

Because the decision of the USCIS may have been *ultra vires*, Plaintiff has raised serious questions going to the merits of whether USCIS errored in its decision denying Plaintiff's adjustment-of-status application.

**(2)    Irreparable Harm**

As stated previously, Plaintiff alleges she will suffer irreparable harm in the absence of a temporary restraining order because DHS may enter a removal order against her at any time. Moreover, Plaintiff contends her removal will trigger another 10-year period in which she is inadmissible to obtain lawful residency, her adjustment-of-status application will be abandoned, and she will result in her separation from her husband.

Thus, Plaintiff has sufficiently shown irreparable harm. *See Leiva-Perez v. Holder*, 640 F.3d 962, 969 (9th Cir. 2011) ("[A] noncitizen must show that there is a reason specific to his or her case … that removal

would inflict irreparable harm – for example, that removal would effectively prevent her from pursuing her petition for review[.]").

### (3)  Balance of the Equities & Public Interest

As discussed above, in the absence of a temporary restraining order, Plaintiff risks immediate removal from the United States, abandonment of her adjustment-of-status application, and separation from her husband in the absence of an injunction.  On the other hand, any harm Defendants may suffer if DHS is prohibited from issuing an order to remove Plaintiff from the United States is minimal, especially in light of the short duration of the temporary restraining order.

### (4)  Public Interest

Plaintiff argues the TRO would serve the public interest in "just judgments." *See Ariz. v. Wash.*, 434 U.S. 497, 512 (1978) (holding an "improper opening statement unquestionable tends to frustrate the public interest in having a just judgment reached by an impartial tribunal").  Plaintiff reasons that if the TRO is not granted and Plaintiff is removed, then her adjustment-of-status application will be abandoned, the case will be moot, and she will not be heard on the merits of her claim.  On the other hand, the public interest is also served by the enforcement of the country's immigration laws.  *See East Bay Sanctuary Covenant v. Trump*, 932 F.3d 742, 778-779 (2018).

"When the government is a party, the last two factors (equities and public interest) merge" and "are evaluated on a sliding scale."  *East Bay Sanctuary Covenant v. Trump*, 940 F.3d 1242, 1271 (9th Cir. 2020) (citations omitted).  Plaintiff has made a strong showing that the balance of the equities favors the TRO.  Therefore, Plaintiff has met its burden for issuance of the TRO.

## CONCLUSION

The Court **GRANTS** the TRO and orders the DHS and its officers, agents, and employees to refrain from ordering Plaintiff Yayomi Kanai's removal pending a hearing on her application for a preliminary injunction. Defendants are ordered to show cause why a preliminary injunction should not issue.  The hearing on the order to show cause is hereby scheduled for July 8, 2020, at 10 a.m.

Having granted the TRO without requiring Plaintiff to give notice, Plaintiff's motion to waive notice for the issuance of the TRO is **GRANTED**.  However Plaintiff must serve the complaint and this order on Defendants no later than June 29, 2020.  Defendants' response is to be filed no later than July 2, 2020. Plaintiff's reply is to be served no later than July 6, 2020.

**IT IS SO ORDERED.**