NICOLA T. HANNA
United States Attorney
DAVID M. HARRIS
Assistant United States Attorney
Chief, Civil Division
JOANNE S. OSINOFF
Assistant United States Attorney
Chief, General Civil Section
AARON KOLLITZ (Cal. Bar No. 238580)
Assistant United States Attorney
    Federal Building, Suite 7516
    300 North Los Angeles Street
    Los Angeles, California 90012
    Telephone: (213) 894-2083
    Facsimile: (213) 894-7819
    E-mail: Aaron.Kollitz@usdoj.gov

Attorneys for Defendants
UNITED STATES DEPARTMENT OF HOMELAND SECURITY and UNITED
STATES CITIZENSHIP AND IMMIGRATION SERVICES

# UNITED STATES DISTRICT COURT

## FOR THE CENTRAL DISTRICT OF CALIFORNIA

### WESTERN DIVISION

| | |
|---|---|
| YAYOMI KANAI,<br><br>             Plaintiffs,<br><br>        v.<br><br>UNITED STATES DEPARTMENT OF HOMELAND SECURITY and UNITED STATES CITIZENSHIP AND IMMIGRATION SERVICES,<br><br>             Defendants. | No. CV 20-5345-CMB (KSx)<br><br>**DEFENDANTS' RESPONSE TO ORDER TO SHOW CAUSE RE PRELIMINARY INJUNCTION; DECLARATION OF CLYDE MOORE**<br><br>Date:  August 4, 2020<br>Time:  10:00 AM<br>Dept.: 8B |

Defendants respond to the Order to Show Cause Re Preliminary Injunction as

follows:

/ / / /

/ / / /

/ / / /

/ / / /

## MEMORANDUM OF POINTS AND AUTHORITIES

## I.   INTRODUCTION

In 1996, Plaintiff Yayomi Kanai entered the United States on a short-term 90-day tourist visa, but failed to depart until 2003. It is undisputed that she was "unlawfully present" during that time. See 8 U.S.C. § 1182(a)(9)(B)(ii). When Plaintiff re-entered the United States a few years later, she sought admission into the country. See 8 U.S.C. § 1101(a)(13)(A). Under the plain language of 8 U.S.C. § 1182(a)(9)(B)(ii), Plaintiff is inadmissible because she "has been unlawfully present in the United States for one year or more, and who again seeks admission within 10 years of the date of such alien's departure or removal from the United States."

Although the plain language of the applicable immigration statutes incontrovertibly establishes that Plaintiff is inadmissible, she seeks a preliminary injunction precluding her removal from the United States. Even as Plaintiff recognizes that Defendants correctly interpreted the unambiguous statutes, she asks this Court to interpret 8 U.S.C. § 1182(a)(9)(B) "more liberally" than the other subparagraphs of that statute to re-characterize her status as "not someone who again seeks admission within 10 years of the date of her departure[.]" See Mot. at 9-11. She attempts to focus on her 2003 departure, while ignoring the impact of her re-entry a few years later without a waiver of inadmissibility. However, it is undisputed that her 2005 re-entry was not substantively lawful. The only matter that Plaintiff disputes is that this re-entry tolled the running of the 10-year bar to admissibility under 8 U.S.C. § 1182(a)(9)(B)(i)(II).

In addition to a textual reading of 8 U.S.C. § 1182(a)(9)(B), an analysis of the Congressional intent and other regulations establish that Plaintiff cannot prevail on the merits. Congress intended to discourage recidivism with immigration law violations and Plaintiff's self-serving interpretation of 8 U.S.C. § 1182(a)(9)(B) encourages it. Plaintiff's legal theories simply do not withstand closer scrutiny.

Plaintiff also cannot prove that she will suffer irreparable harm without a preliminary injunction because she always can reapply for an adjustment of status with a

1

requisite waiver prescribed by 8 U.S.C. §1182(a)(9)(B)(v). At bottom, Plaintiff simply is requesting a preliminary injunction because she is dissatisfied with the adjudication of her Form I-485 application to adjust status. Accordingly, Plaintiff's request for a preliminary injunction lacks merit and this Court should reject it.

## II. **LEGAL ARGUMENT**

### A. Plaintiff Will Not Prevail on the Merits

1. The plain language of the applicable statutes establishes Plaintiff is inadmissible

This Court does not need to look beyond the plain language of the statutes to confirm that USCIS correctly determined Plaintiff is inadmissible.  When determining whether Plaintiff is inadmissible, there is "no more persuasive evidence of the purpose of a statute than the words by which the legislature undertook to give expression to its wishes." Perry v. Commerce Loan Co., 383 U.S. 392, 400, reh'g denied, 384 U.S. 934 (1966). If the statutory language is clear, that is the end of the inquiry, as immigration judges, the Board of Immigration Appeals, and the courts, must give effect to the unambiguously expressed intent of Congress. See In re H-N-, 22 I. & N. Dec. 1039, 1041 (BIA 1999).

The plain language of 8 U.S.C. § 1182(a)(9)(B) establishes that Plaintiff is inadmissible. 8 U.S.C. § 1182(a)(9)(B)(i) sets forth: "Any alien (other than an alien lawfully admitted for permanent residence) who—

"(I)    was unlawfully present in the United States for a period of more than 180 days but less than 1 year, voluntarily departed the United States (whether or not pursuant to section 1254a(e) [3] of this title) prior to the commencement of proceedings under section 1225(b)(1) of this title or section 1229a of this title, and again seeks admission within 3 years of the date of such alien's departure or removal, or

"(II)   has been unlawfully present in the United States for one year or more, and who again seeks admission within 10 years of the date of such

2

1 alien's departure or removal from the United States,

2 "is inadmissible."

3     8 U.S.C. § 1182(a)(9)(B)(ii) sets forth, in pertinent part: "For purposes of this

4 paragraph, an alien is deemed to be unlawfully present in the United States if the alien is

5 present in the United States after the expiration of the period of stay authorized by the

6 Attorney General or is present in the United States without being admitted or paroled."

7     Congress has specifically defined "admission" and "admitted" in the context of 8

8 U.S.C. § 1182. "The terms 'admission' and 'admitted' mean, with respect to an alien, the

9 lawful entry of the alien into the United States after inspection and authorization by an

10 immigration officer." 8 U.S.C. § 1101(a)(13)(A).  The application for the adjustment of

11 status also is considered seeking "admission." See Matter of Rodarte, 23 I&N Dec. 905

12 (BIA 2006).

13     Plaintiff admits that she entered the United States three times since September

14 1995. Plaintiff further admits that she re-entered the United States under the Visa Waiver

15 Program in 1996. On each occasion, she only was authorized to stay in the United States

16 for 90 days. But she became "unlawfully present" when she stayed until 2003. See 8

17 U.S.C. § 1182(a)(9)(B)(ii). When Plaintiff re-entered the United States a few years later,

18 her return was a procedurally regular "admission" pursuant to Matter of Quilantan, 25

19 I&N Dec. 285 (BIA 2010), but substantively unlawful in view of the existing unlawful

20 presence on the ground of inadmissibility. . See 8 U.S.C. § 1101(a)(13)(A). Because she

21 failed to obtain a waiver of nonimmigrant inadmissibility under 8 U.S.C.

22 §1182(a)(9)(B)(v), Plaintiff's immigration status has been "inadmissible" since she re-

23 entered the United States.

24     2.  8 C.F.R §212.2(a) Illustrates that USCIS's Decision is Consistent with the

25         Plain Language of the Statutes

26     Congress used the same language in 8 U.S.C. §§ 1182(a)(9)(A) and (B), which

27 should be interpreted in the same way. Both subparagraphs address when an alien "again

28 seeks admission within" the relevant inadmissibility period. See 8 U.S.C. §

1182(a)(9)(A)(i), (ii); see also 8 U.S.C. § 1182(a)(9)(B)(i). Accordingly, that operative phrase within the statute should be interpreted identically. As an extension of 8 U.S.C. § 1182(a)(9)(A)(i) and (ii), 8 C.F.R. § 212.2(a) unequivocally establishes that an alien who departs and then "again seeks admission within" the United States must remain outside of the country for the entire duration of the inadmissibility period:

> Any alien who has been deported or removed from the United States is inadmissible to the United States unless the alien has remained outside of the United States for five consecutive years since the date of deportation or removal. If the alien has been convicted of an aggravated felony, he or she must remain outside of the United States for twenty consecutive years from the deportation date before he or she is eligible to re-enter the United States. Any alien who has been deported or removed from the United States and is applying for a visa, admission to the United States, or adjustment of status, must present proof that he or she has remained outside of the United States for the time period required for re-entry after deportation or removal.

8 C.F.R. § 212.2(a).[1] As aliens previously removed from the United States must remain outside the country for the entire inadmissibility period before "again seek[ing] admission" (see 8 U.S.C. § 1182(a)(9)(A)), then the same requirement should be afforded a parallel interpretation concerning aliens unlawfully present (see 8 U.S.C. § 1182(a)(9)(B)). Indeed, when Congress reenacts an existing provision without substantive changes while enacting a new provision using the identical language of the existing provision, we must presume that Congress intended to adopt the existing and settled interpretation. See Lorillard v. Pons, 434 U.S. 575, 580 (1979). Therefore, as Plaintiff failed to remain outside of the United States during the entire inadmissibility period, Plaintiff remains inadmissible.

---

[1] The sole exception is if an alien returns during the inadmissibility period with a waiver. See 8 U.S.C. § 1182 (d)(3)(A). But this exception does not apply to this lawsuit because Plaintiff never filed a request for a waiver.

1

2

3.  <u>Plaintiff's Argument that 8 U.S.C. § 1182(a)(9)(B) Should be Interpreted</u>
<u>"More Liberally" than Other Subparagraphs is Misguided</u>

3        Plaintiff's argument that 8 U.S.C. § 1182(a)(9)(B) should be interpreted "more

4   liberally," <u>see</u> Mot. at 9-11, is based exclusively on one inapposite case: <u>Matter of</u>

5   <u>Arrabally</u>, 25 I&N Dec. 771 (BIA 2012). The dispute in this case is the meaning of

6   "again seeks admission." But the Board of Immigration Appeals does not provide any

7   analysis or ruling on that critical statutory language in <u>Arrabally</u>.  In fact, the Board of

8   Immigration Appeals did not interpret 8 U.S.C. § 1182(a)(9)(B) at all or determine that

9   any subparagraph of that statute should be interpreted more leniently, or strictly, than the

10  others. Rather, the <u>Arrabally</u> case pertains to the impact of a grant of advance parole

11  upon a departure of an alien unlawfully present. Here, Plaintiff neither received nor

12  applied for any advance parole before her departures from the United States. So, as

13  <u>Arrabally</u> provides no guidance to this Court on this lawsuit, this Court should reject

14  Plaintiff's entire argument based on the same.

15

16

4.  <u>USCIS's Interpretation of 8 U.S.C. § 1182(a)(9)(B) is Reasonable and</u>
<u>Consistent with Congress' Intent</u>

17        As USCIS's decision is consistent with the plain language of 8 U.S.C. §

18  1182(a)(9)(B), this Court does not need to conduct the analysis set forth in <u>Chevron,</u>

19  <u>U.S.A. v. Natural Res. Def. Council</u>, 467 U.S. 837, 842-43 (1984). If the intent of

20  Congress is clear, "that is the end of the matter; for the court, as well as the agency, must

21  give effect to the unambiguously expressed intent of Congress." <u>Id.</u> In making that

22  assessment, courts not only look at the precise statutory section in question, but also

23  analyze the provision in the context of the governing statute as a whole, presuming

24  congressional intent to create a "symmetrical and coherent regulatory scheme." <u>Food &</u>

25  <u>Drug Admin. v. Brown & Williamson Tobacco Corp.</u>, 529 U.S. 120, 133 (2000).

26        Second, if the statute is silent or ambiguous on the specific issue, courts must

27  defer to the agency's reasonable interpretation of the statute so long as the interpretation

28  is consistent with the purposes of the statute. <u>See Chevron</u>, 467 U.S. at 843–45 ("The

power of an administrative agency to administer a congressionally created . . . program necessarily requires the formulation of policy and the making of rules to fill any gap left, implicitly or explicitly, by Congress," (quotations omitted)); Nat'l Cable & Telecomms. Ass'n v. Brand X Internet Servs., 545 U.S. 967, 980 (2005) ("[A]mbiguities in statutes within an agency's jurisdiction to administer are delegations of authority to the agency to fill the statutory gap in reasonable fashion."). "Chevron's premise is that it is for agencies, not courts, to fill statutory gaps." Nat'l Cable & Telecomms. Ass'n, 545 U.S. at 982.

In other words, if the agency's interpretation is reasonable and not contrary to the discernable intent of Congress, then the Court should defer to the agency's interpretation, even if it is not the only reasonable interpretation or the one the reviewing court would make if deciding the issue in the first instance. See Unemployment Comp. Comm'n v. Aragon, 329 U.S. 143, 153–54 (1946); see also Chevron, 467 U.S. at 842–43. Rather, "Congress, when it left ambiguity in a statute meant for implementation by an agency, understood that the ambiguity would be resolved, first and foremost, by the agency, and desired the agency (rather than the courts) to possess whatever degree of discretion the ambiguity allows." Nat'l Cable & Telecomms. Ass'n, 545 U.S. at 982. The construction of a statute by those charged with its administration is entitled to substantial deference. See United States v. Rutherford, 442 U.S. 544, 553 (1979); see also McKart v. United States, 395 U.S. 185, 193–94 (1969) (an agency is created for purpose of applying a statute in the first instance); Chevron, 467 U.S. at 844 ("[C]onsiderable weight should be accorded to an executive department's construction of a statutory scheme it is entrusted to administer, and the principle of deference to administrative interpretations" (footnote omitted)).

Congress expressly delegated to the Department of Homeland Security the administration and enforcement of immigration laws:

The Secretary of Homeland Security shall be charged with the administration and enforcement of this chapter and all other laws relating to

6

the immigration and naturalization of aliens, except insofar as this chapter or such laws relate to the powers, functions, and duties conferred upon the President, Attorney General, the Secretary of State, the officers of the Department of State, or diplomatic or consular officers: Provided, however, that determination and ruling by the Attorney General with respect to all questions of law shall be controlling.

8 U.S.C. § 1103(a)(1).

Congress created a tiered system of increasingly severe consequences for the immigration violations identified in 8 U.S.C. § 1182(a)(9), each consequence tethered to the alien's departure from the United States. The Board of Immigration Appeals concluded:

Congress made departure (rather than commencement of unlawful presence) the event that triggers inadmissibility or ineligibility for relief, because it is departure which marks the culmination of the alien's prior immigration violation and which makes the alien a potential *recidivist*. It is recidivism, and not mere unlawful presence, that [8 U.S.C. § 1182(a)(9)] is designed to prevent.

See In re Rodarte-Roman, 23 I. & N. Dec. at 909. Indeed, "[t]he unifying theme of [8 U.S.C. § 1182(a)(9)] is that all its subparagraphs seek to compound the adverse consequences of immigration violations by making it more difficult for individuals who have left the United States after committing such violations to be lawfully readmitted thereafter." Id.

Plaintiff's argument contradicts the Congressional intent as it actually rewards the very recidivism Congress intended to prevent. Plaintiff argues that her inadmissibility period continues to run even after she violated United States immigration laws again by returning prematurely and remaining in the country unlawfully. If this Court adopts that interpretation, then there would be no consequence for Plaintiff being inadmissible and unlawfully present in the United States during her inadmissibility period. So long as she

7

continues to evade immigration authorities while she is unlawfully present in the United States, she then could apply to adjust her immigration status at the end of her inadmissibility period. If Plaintiff is allowed to readjust her status after she returned to the United States during her inadmissibility period, it would effectively nullify the departure requirement. Notably, Plaintiff fails to explain why departure under those circumstances would be necessary. Accordingly, this Court should reject Plaintiff's far-reaching interpretation of 8 U.S.C. § 1182(a)(9).

## B. Plaintiff Will Not Suffer Irreparable Harm

Plaintiff will not suffer irreparable harm without the preliminary injunction. Despite being inadmissible, Plaintiff still has administrative options available to her, which she did not yet pursue. She can file a Form I-601 waiver along with a new Form I-485 if she wants to adjust her status. Indeed, Congress deferred to USCIS the authority to grant applicants a waiver of the inadmissibility bar:

> The Attorney General has sole discretion to waive [8 U.S.C. § 1182(a)(9)(B)(i)] in the case of an immigrant who is the spouse or son or daughter of a United States citizen or of an alien lawfully admitted for permanent residence, if it is established to the satisfaction of the Attorney General that the refusal of admission to such immigrant alien would result in extreme hardship to the citizen or lawfully resident spouse or parent of such alien. No court shall have jurisdiction to review a decision or action by the Attorney General regarding a waiver under this clause.

8 U.S.C. §1182(a)(9)(B)(v).

Should Plaintiff pursue a reopening of her denied Form I-485 for continued adjudication or file a new Form I-485 with a Form I-601 waiver request (with any other waiver requests and evidence that may be necessary), USCIS will not refer Plaintiff to Immigration and Customs Enforcement while her adjustment application remains open and pending, so long as there are no material changes in her security checks. See Declaration of Clyde Moore, ¶ 4. Therefore, Plaintiff still can insulate herself from

8

removal and potentially adjust her status by filing the previously-referenced waiver.

### C. The Balance of the Equities and Public Interest Favors Defendants

Finally, a preliminary injunction should be denied because Plaintiff has not shown that the balance of equities or the public interest weigh in favor of the preliminary injunction she requests. It is well-settled that the public interest in enforcement of United States immigration laws is significant. United States v. Martinez-Fuerte, 428 U.S. 543, 556-58 (1976); Blackie's House of Beef, Inc. v. Castillo, 659 F.2d 1211, 1221 (D.C. Cir. 1981) ("The Supreme Court has recognized that the public interest in enforcement of the immigration laws is significant."). Here, Plaintiff seeks a preliminary injunction to prevent the enforcement of immigration laws just because she was dissatisfied with USCIS's decision that was based upon a correct interpretation of unambiguous statutes. Plaintiff was afforded her due process and still has other options that would obviate the need for a preliminary injunction.

Plaintiff also erroneously argues that absent a preliminary injunction, she likely will leave the United States and abandon her application, citing 8 C.F.R. § 245.2(a)(4)(ii). Her application has been adjudicated, so there is no pending application to abandon. Moreover, 8 C.F.R. § 245.2(a)(4)(ii) pertains to removal proceedings relates to alien departures during the pendency of removal proceedings. Plaintiff is not in a removal proceeding, so that regulation is inapposite. Therefore, issuing the preliminary injunction would be inappropriate and unnecessary.

### III.   CONCLUSION

Based upon the foregoing, Defendants request that this Court deny Plaintiff's request for a preliminary injunction.

/ / / /

/ / / /

/ / / /

/ / / /

/ / / /

1    Dated: July 20, 2020                           NICOLA T. HANNA
                                                    United States Attorney
2                                                   DAVID M. HARRIS
                                                    Assistant United States Attorney
3                                                   Chief, Civil Division
                                                    JOANNE S. OSINOFF
4                                                   Assistant United States Attorney
                                                    Chief, General Civil Section
5

6                                                     */s/ Aaron Kollitz*
                                                    AARON KOLLITZ
7                                                   Assistant United States Attorney

8                                                   Attorneys for Defendants
                                                    UNITED STATES DEPARTMENT OF
9                                                   HOMELAND SECURITY and UNITED
                                                    STATES CITIZENSHIP AND
10                                                  IMMIGRATION SERVICES

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28