# UNITED STATES DISTRICT COURT

# CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| YAYOMI KANAI,<br><br>    Plaintiff,<br><br>vs.<br><br>UNITED STATES DEPARTMENT OF<br>HOMELAND SECURITY, et al.<br><br>    Defendants. | Case No.: 2:20-cv-05345-CBM-(KSx)<br><br>**ORDER GRANTING<br>PRELIMINARY INJUNCTION** |

The matter before the Court is an order to show cause why a preliminary injunction should not issue. Plaintiff Yayomi Kanai ("Plaintiff") filed an *ex parte* application for a temporary restraining order and preliminary injunction. (*See* Dkt. No. 2.) The Court granted the temporary restraining order and enjoined defendant Department of Homeland Security ("DHS") from ordering Plaintiff's removal from the United States, pending a hearing on the preliminary injunction. (Dkt. No. 24.) The Court set the preliminary injunction for hearing on July 8, 2020, but the parties stipulated to continue the hearing to August 4, 2020, and that the terms of the temporary restraining order remain in effect until that date. (Dkt. No. 33-34). Defendants DHS and United States Citizenship and Immigration Services ("USCIS") oppose the preliminary injunction, and Plaintiff filed a reply. (Dkt. No. 36 ("Opp."), Dkt. No. 38 ("Reply").)

# I. BACKGROUND

The Court addressed the factual background of this case in its order granting Plaintiff's *ex parte* application for a temporary restraining order.  (*See* Dkt. No. 24 at p. 1-2.)  Therefore, further discussion is unnecessary here.

# II. JURISDICTION

The Court has jurisdiction over this action under the Administrative Procedure Act, 5 U.S.C. §§ 551 *et seq.*, and 28 U.S.C. § 1331.  (*See also* Dkt. No. 24 at p. 2 (discussing subject matter jurisdiction).)

# III. LEGAL STANDARD

A preliminary injunction is an "extraordinary and drastic remedy."  *Munaf v. Green*, 553 U.S. 674, 689 (2008) (quotation marks and citation omitted).  "A plaintiff seeking a preliminary injunction must establish that he is likely to succeed on the merits, that he is likely to suffer irreparable harm in the absence of preliminary relief, that the balance of equities tips in his favor, and that an injunction is in the public interest."  *Winter v. Nat. Res. Def. Council, Inc.*, 555 U.S. 7, 20 (2008).  In the Ninth Circuit, " 'if a plaintiff can only show that there are serious questions going to the merits – a lesser showing than likelihood of success on the merits – then a preliminary injunction may still issue if the balance of hardships tips sharply in plaintiff's favor, and the other two *Winter* factors are satisfied.' "  *Feldman v. Ariz., Sec'y of State's Office*, 843 F.3d 366, 375 (9th Cir. 2016) (quoting *Shell Offshore, Inc. v. Greenpeace, Inc.*, 709 F.3d 1821, 1291 (9th Cir. 2013)) (internal marks omitted).

## A.    Likelihood of Success on the Merits

Plaintiff asserts causes of action under the APA.  The APA provides, in relevant part:

> To the extent necessary to decision and when presented, the reviewing court shall decide all relevant questions of law, interpret constitutional and statutory provisions, and

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

determine the meaning or applicability of the terms of an agency action.  The reviewing court shall –

    (1) compel agency action unlawfully withheld or unreasonably delayed; and

    (2) hold unlawful and set aside agency action, findings, and conclusions found to be –

        (A) arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with the law; …

        (B) in excess of statutory jurisdiction, authority, or limitations, or short of statutory right[.]

5 U.S.C. § 706.  Under the arbitrary and capricious standard, the court will "sustain an agency action if the agency has articulated a rational connection between the facts found and the conclusions made." *San Luis & Delta Mendota Water Authority v. Locke*, 776 F.3d 971, 994 (9th Cir. 2014).  "The arbitrary or capricious standard is a deferential standard of review under which the agency's action carries a presumption of regularity." *Id.* The reviewing court must assess whether the agency decision "was based on a consideration of the relevant factors and whether there has been a clear error of judgment[.]" *Dep't of Homeland Security Regents of the University of California*, ---- S. Ct. ----, 2020 WL 3271746, at *7 (Sup. Ct. 2020) (citation omitted).

      At issue in this preliminary injunction is whether Defendants erred in denying Plaintiff's adjustment-of-status application under 8 U.S.C. § 1182(a)(9)(B)(i)(II).  USCIS held that Plaintiff's admission to the United States in 2005 "was procedurally regular, [but] [ ] substantively unlawful and therefore tolled the running of the 10-year bar to admissibility under [8 U.S.C. § 1182(a)(9)(B)(i)(II)."  (Dkt. No. 2-2 (Decision of the USCIS) at p. 3.)  Therefore, the Court must consider whether 8 U.S.C. § 1182(a)(9)(B)(i)(II) allows for "tolling" of the period of inadmissibility.

1.      **Plain Language**

USCIS denied Plaintiff's adjustment-of-status application under 8 U.S.C. § 1182(a)(9)(B)(i)(II).  That section provides:

> Any alien (other than an alien lawfully admitted for permanent residence) who –
>
>> (I) was unlawfully present in the United States for a period of more than 180 days but less than 1 year, voluntarily departed the United States (whether or not pursuant to section 1254(a)(e)[] of this title) prior to the commencement of proceedings under section 1225(b)(1) of this title or section 1229a of this title, and again seeks admission within 3 years of the date of such alien's department or removal, or
>>
>> (II) has been unlawfully present in the United States for one year or more, and who again seeks admission within 10 years of the date of such alien's departure or removal from the United States,
>
> is inadmissible.

8 U.S.C. § 1182(a)(9)(B)(i).  "An alien is deemed to be unlawfully present in the United States if the alien is present in the United States after the expiration of the period of stay authorized by the Attorney General or is present in the United States without being admitted or paroled."  8 U.S.C. § 1182(a)(9)(B)(ii).  "The terms 'admission' and 'admitted' mean, with respect to an alien, the lawful entry of the alien into the United States after inspection and authorization by an immigration officer."  8 U.S.C. § 1101(a)(13)(A).  The adjustment of status qualifies as an "admission."  *In re Rodarte*, 23 I&N Dec. 905, 908 (BIA 2006).

Plaintiff argues USCIS erred in denying her adjustment-of-status application because it found the 10-year period of inadmissibility under 8 U.S.C. § 1182(a)(9)(B)(i)(II) was tolled when Plaintiff made a substantively unlawful reentry to the United States in 2005, after having been unlawfully present in the

United States from 1996 to 2003.  Defendants argue Plaintiff became "unlawfully present" when she entered the United States under the VWP with authorization to stay for 90 days, but stayed until 2003.  Thus, Defendants contend Plaintiff remained inadmissible when she reentered the United States under the Visa Waiver Program ("VWP") in 2005 because her admission was "substantively unlawful" due to her having overstayed the VWP issued to her in 1996 without receiving a waiver of nonimmigrant inadmissibility under 8 U.S.C. § 1182(a)(9)(B)(v), thereby tolling the 10-year period of inadmissibility.[1]

Defendants' argument is unpersuasive.  The plain language of 8 U.S.C. § 1182(a)(9)(B)(i)(II) precludes "[a]ny alien (other than an alien lawfully admitted for permanent residence)" from adjusting his or her status if he or she "seeks admission within 10 years of the date of such alien's departure or removal from the United States."  Based on the current record, Plaintiff last departed the United States in 2003.  Thus, Plaintiff was inadmissible under 8 U.S.C. § 1182(a)(9)(B)(i)(II) from 2003 to 2013.  Because Plaintiff filed her adjustment-of-status application in 2019, USCIS's conclusion that Plaintiff was inadmissible is not supported by the plain language of 8 U.S.C. § 1182(a)(9)(B)(i)(II).

**2.      Interpreting 8 U.S.C. § 1182(a)(9)(B)(i) in accordance with 8 C.F.R. § 212.2(a).**

Defendants argue 8 U.S.C. § 1182(a)(9)(B)(i) should be interpreted consistently with 8 U.S.C. § 1182(a)(9)(A), such that 8 C.F.R. § 212(a) applies to

---

[1] 8 U.S.C. § 1182(a)(9)(B)(v) provides:
> The Attorney General has sole discretion to waive clause (i) [of 8 U.S.C. § 1182(a)(9)(B)] in the case of an immigrant who is the spouse or son or daughter of a United States citizen or an alien lawfully admitted for permanent residence, if it is established to the satisfaction of the Attorney General that the refusal of admission to such immigrant alien would result in extreme hardship to the citizen or lawfully resident spouse or parent of such alien.  No court shall have jurisdiction to review a decision or action by the Attorney General regarding a waiver under this clause.

both statutes.  8 U.S.C. § 1182(a)(9)(A), amongst other things, makes inadmissible certain aliens who have been previously removed from the United States and seek admission within five years of the date of removal or within twenty years for second or subsequent removals or at any time if the alien was convicted of an aggravated felony.[2]  8 C.F.R. § 212(a) provides, in relevant part: "Any alien who has been deported or removed from the United States is inadmissible to the United States unless the alien has remained outside of the United States for five consecutive years since the date of deportation or removal."

Defendants contend subdivision (A) and (B) of 8 U.S.C. § 1182(a)(9) should be given parallel interpretation because both sections use the phrase "again seeks admission within" the United States.  Defendants contend their

---

[2] 8 U.S.C. § 1182(a)(9)(A) provides:
          (A) Certain aliens previously removed
          (i) Arriving aliens
          Any alien who has been ordered removed under section 1225(b)(1) of this title or at the end of proceedings under section 1229a of this title initiated upon the alien's arrival in the United States and who again seeks admission within 5 years of the date of such removal (or within 20 years in the case of a second or subsequent removal or at any time in the case of an alien convicted of an aggravated felony) is inadmissible.
          (ii) Other aliens
          Any alien not described in clause (i) who –
                (I) has been ordered removed under section 1229a of this title or any other provision of law, or
                (II) departed the United States while an order of removal was outstanding,
                    and who seeks admission within 10 years of the date of such alien's departure or removal (or within 20 years of such date in the case of a second or subsequent removal or at any time in the case of an alien convicted of an aggravated felony) is inadmissible.
          (iii) Exception
          Clauses (i) and (ii) shall not apply to an alien seeking admission within a period if, prior to the date of the alien's reembarkation at a place outside the United States or attempt to be readmitted from foreign contiguous territory, the Attorney General has consented to the alien's reapplying for admission.

1    interpretation of the statutes is supported by *Lorillard v. Pons*, 434 U.S. 575, 580

2    (1979), in which the United States Supreme Court held that when "Congress

3    adopts a new law incorporating sections of a prior law, Congress normally can be

4    presumed to have knowledge of the interpretation given to the incorporated law, at

5    least insofar as it affects the new statute."  Therefore, under Defendants'

6    interpretation of the relevant statutes, the regulation requiring aliens to remain

7    outside the United States for five years after removal or deportation should apply

8    to 8 U.S.C. § 1182(a)(9)(A)(i).

9         The statutory interpretation offered by Defendants is incorrect for at least

10   two reasons.  *First*, although both subdivisions (A) and (B) of 8 U.S.C. §

11   1182(a)(9) use the phrase "again seeks admission within," the subdivisions

12   address different situations.  Subdivision (A) addresses situations in which an alien

13   "again seeks admission within" the United States after having been ordered

14   removed or if the alien departed while a removal order was pending, while

15   subdivision (B) addresses situations in which an alien was unlawfully present in

16   the United States and subsequently departed voluntarily or was removed.

17        *Second*, even assuming 8 C.F.R. § 212.2(a) applies to this case, Plaintiff

18   falls outside the scope of that regulation.  By its plain language, 8 C.F.R. §

19   212.2(a) requires an alien to remain outside the United States for five consecutive

20   years "since the date of deportation or removal."  Here, Plaintiff was neither

21   deported or removed from the United States.  Rather, it is undisputed that she

22   voluntarily departed the United States on several occasions before 2005, and the

23   USCIS denied Plaintiff's adjustment-of-status application based on her 2003

24   departure from the United States.

25   **3.    Ambiguity of 8 U.S.C. § 1182(a)(9)(B)(i)**

26        "When a court reviews an agency's construction of the statute which it

27   administers, it is confronted with two questions." *Chevron, U.S.A., Inc. v. Nat.*

28   *Res. Def. Council*, 467 U.S. 837, 842 (1984).  The court first inquires "whether

Congress has directly spoken to the precise question at issue," and, "[i]f the intent of Congress is clear, that is the end of the matter." *Id.* at 842-43. "In determining whether Congress has specifically addressed the question at issue, a reviewing court should not confine itself to examining a particular statutory provision in isolation. The meaning – or ambiguity – of certain words or phrases may only become evidence when placed in context." *Food and Drug Admin. v. Brown & Williamson Tobacco Corp.*, 529 U.S. 120, 132 (2000). "If, however, the court determines Congress has not directly addressed the precise question at issue" and the statute is silent or ambiguous, then the second inquiry "is whether the agency's answer is based on a permissible construction of the statute." *Chevron*, 467 U.S. at 843 (footnotes omitted).

Here, 8 U.S.C. § 1182(a)(9)(B)(i) is silent as to whether an alien remains inadmissible if the alien is unlawfully present in the United States following a departure. Congress delegated to the Department of Homeland Security the administration and enforcement of immigration laws. *See* 8 U.S.C. § 1103(a)(1). Defendants rely on *In re Rodarte,* 23 I&N Dec. 905, 909, in which the Board of Immigration Appeals explained:

> Congress made departure (rather than commencement of unlawful presence) the event that triggers inadmissibility or ineligibility for relief, because it is departure which marks the culmination of the alien's prior immigration violation and which makes the alien a potential *recidivist*. It is recidivism, and not mere unlawful presence, that [8 U.S.C. § 1182(a)(9)] is designed to prevent.

*In re Rodarte*, 23 I&N Dec. 905, 909 (italics in original).

Thus, Congress intended to make departure the event that triggers inadmissibility, rather than unlawful presence. The interpretation offered by Defendants, however, would make Plaintiff's unlawful presence in the United States since 2005 the event that bars her admissibility under 8 U.S.C. § 1182(a)(9)(B)(i). This result is contrary to Congress's intent to punish departures

rather than unlawful presence, as explained by the Board of Immigration Appeals. Defendants argue the interpretation offered by Plaintiff would "reward[] the very recidivism Congress intended to prevent" because she would be permitted "to evade immigration authorities while she is unlawfully present in the United States, [and] then [she] could apply to adjust her status at the end of her inadmissibility period," which would "effectively nullify the departure requirement." (Opp. at p. 7:23-8:7.) This position is misguided, however, because Congress intended recidivism to be defined by departure rather than unlawful presence. Moreover, the departure requirement is not nullified under Plaintiff's interpretation, but was simply triggered in 2003 – 10 years before Plaintiff attempted to adjust her status.

Moreover, the Department of Homeland Security has interpreted 8 U.S.C. § 1182(a)(9)(B) to require a departure. *See* Memorandum, Donald Neufeld, Acting Associate Director, Consolidation of Guidance Concerning Unlawful Presence for Purposes of Sections 212(a)(9)(B)(i) and 212(a)(9)(C)(i)(I) of the Act, at p. 16 (May 6, 2009) (the "Neufeld Memo."). The Board of Immigration Appeals held in *In re Rodarte*, 23 I&N Dec. 905 (BIA 2006) that departure triggers the bars under 8 U.S.C. § 1182(a)(9)(B)(i), not accrual of unlawful presence without departure. *See also* Neufeld Memo. at p. 17 (stating *Rodarte* held that "[d]eparture triggers the bars; the IJ erred when denying adjustment of status because the individual's accrual of unlawful presence in excess of one (1) year without departure.")

Accordingly, Defendants provide no guidance from the DHS supporting their position that Plaintiff remained inadmissible ten years after her last departure. To the extent that guidance from the DHS exists in the record, it indicates that 8 U.S.C. § 1182(a)(9)(B)(i) is not intended to punish unlawful presence and that a "departure" triggers that section's bar to admissibility.

**B.    Irreparable Harm**

Plaintiff argues she will suffer irreparable harm if a preliminary injunction does not issue because she may be subject to immediate removal, and would be

1   barred from subsequent reentry.  Defendants argue certain administrative

2   procedures remain available for Plaintiff to adjust her status because Plaintiff may

3   seek to reopen her application for adjustment-of-status or file a new application for

4   adjustment-of-status, along with a waiver from the Attorney General under 8

5   U.S.C. § 1182(a)(9)(B)(v).  Clyde Moore ("Moore"), a Section Chief of the Los

6   Angeles County Field Office of USCIS and DHS, declares that USCIS will not

7   refer Plaintiff to U.S. Immigration and Customs Enforcement ("USICE"), the sub-

8   agency which handles removal operations and processing, during the time in

9   which Plaintiff pursues her available administrative options.[3]  (*See* Dkt. No. 37,

10   Ex. 1 (Moore Decl.) at ¶¶ 1, 4.)  Thus, Defendants argue Plaintiff "can insulate

11   herself from removal and potentially adjust her status by filing the previously-

12   referenced waiver[,]" thus eliminating the potential for irreparable harm.  (Opp. at

13   p. 8:28-9:1.)

14          Here, the commitment from Defendants not to refer Plaintiff for removal

15   from the United States while she pursues the administrative procedures as

16   described by the Defendants does not completely eliminate the potential for

17   irreparable harm because USICE does not require a referral to initiate removal.

18   Moreover, Plaintiff would only be insulated from removal while her administrative

19   remedies are pending.  Thus, if those remedies are denied before this case is

20   resolved, Plaintiff may be removed from the United States and barred from

21   reentry, thereby mooting this action.

22

23

24

25

26   [3] Moore declares, "Should [Plaintiff] pursue a reopening of her denied Form I-485 for continued
     adjudication by USCIS or file a new Form I-485 with USCIS, with a Form I-601 waiver request
27   and any other waiver requests and evidence that may be necessary, USCIS will not refer
     [Plaintiff] to USICE while her adjustment application remains open and pending, provided that
28   there are no material changes in her security checks."  (Moore Decl. at ¶ 4.)

1

## C.　　　　　The Balance of the Equities and Public Interest

2       "When the government is a party, the last two factors (equities and public

3  interest) merge" and "are evaluated on a sliding scale."  *East Bay Sanctuary*

4  *Covenant v. Trump*, 940 F.3d 1242, 1271 (9th Cir. 2020) (citations omitted).

5       Defendants argue the public interest in enforcing the immigration laws is

6  significant.  (Opp. at p. 9:3-9 (citing *United States v. Martinez-Fuerte*, 428 U.S.

7  543, 556-58 (1976); *Blackie's House of Beef, Inc. v. Castillo*, 659 F.2d 1211, 1221

8  (D.C. Cir. 1981).). Defendants argue Plaintiff "seeks a preliminary injunction to

9  prevent the enforcement of immigration laws just because she was dissatisfied

10  with USCIS's decision that was based upon a correct interpretation of

11  unambiguous statutes."  (Opp. at p. 9:9-11.)  Plaintiff argues the waiver under 8

12  U.S.C. § 1182(a)(9)(B)(v) is discretionary, such that it is irrelevant to the balance

13  of the equities, and that she may still be removed from the United States by

14  USICE while her application for a waiver is pending.

15  ///

16  ///

17  ///

18  ///

19  ///

20  ///

21  ///

22  ///

23  ///

24  ///

25  ///

26  ///

27  ///

28  ///

As this Court recognized in its order granting the temporary restraining order, the public interest is served by the enforcement of the country's immigration laws.  (*See* Dkt. No. 24 at p. 5 (citing *East Bay Sanctuary Covenant v. Trump*, 932 F.3d 742, 778-79 (2018).)  Moreover, this Court reasoned the balance of the equities tipped in favor of Plaintiff in part because Plaintiff would be subject to removal if Defendants were not enjoined before a motion for a preliminary injunction could be heard and she would be without recourse, which remains true at this stage of the proceedings.  (*Id.*)  Therefore, the balance of the equities tip in favor of Plaintiff.

## IV. CONCLUSION

The Court **GRANTS** the preliminary injunction.

**IT IS SO ORDERED.**

DATED: August 20, 2020

_____
CONSUELO B. MARSHALL
UNITED STATES DISTRICT JUDGE